## JAMES KANNON v. WM. GALLOWAY.

1. PLEADING AND PRACTICE. Non est factum. *Exclusion of use of microscope by jury. Error. Evidence.* Where parties consent, signatures not in the record may be submitted to the jury as genuine, for comparison with the signature in controversy, and to aid them in the determination of such a question, microscopes may be used.

2. SAME. *Same. Affidavit.* An affidavit which states that affiant was ignorant of certain evidence until after verdict, but fails to show that he was unable to procure the testimony of other experts, who would have proven the same fact, is insufficient.

### FROM MAURY.

Appeal from the Circuit Court. T. M. JONES, Special Judge.

FRIERSON & FLEMING and MYERS, LOONEY & WHITTHORNE for Galloway.

WM. P. MARTIN and A. M. HUGHES for James Kannon.

DEADERICK, J., delivered the opinion of the Court.

Galloway brought this action against Kannon in the Circuit Court of Maury County, upon a note for $10,671.85. Kannon pleaded *non est factum,* and upon the trial the jury rendered a verdict for Galloway for the amount of the note and interest, and a new trial having been refused, Kannon appealed in error to this Court.

Several affidavits were presented upon the motion for a new trial, of persons professing to be experienced and skillful in determining the differences be-

James Kannon *v.* Wm. Galloway.

tween genuine and forged signatures; affiants express the opinion that the note sued on is a forgery.

Kannon states in an affidavit that he did not know that he could prove the facts by those witnesses stated in their affidavits, until after the verdict of the jury was rendered, except as to one of them, whose attendance he could not procure. Why he could not procure the attendance of the affiant last referred to, is not stated; nor is it stated that there were not other experts by whom he could have proved the same facts, whose attendance he could have procured.

There was much testimony upon the trial *pro* and *con*, upon the genuineness of the signature to the notes sued on; *non est factum*, being in fact the only plea pleaded by defendant below. The affidavit does not show that any effort was made to procure the evidence of experts, and we do not think that these affidavits show any sufficient reasons why this Court should reverse, in order that plaintiff in error should have a new trial.

Only one other error is seriously urged why the judgment should be reversed. From the record it appears that on the trial some eighteen signatures of Kannon to notes and other instruments, which were admitted by both parties to be genuine, were by consent allowed to go to the jury for the purpose of being compared by them with the signature to the note.

Where the parties to the suit consent that signa-

tures not in the record, but which they admit to be genuine, may be submitted to the jury, to be compared by them with the signature in controversy, the jury may make the comparison to aid them in the determination of the question submitted.

When the jury were about retiring to consider of their verdict in this case, the defendant below, by his counsel, asked permission of the Court to furnish the jury magnifying glasses, that they might examine the writings admitted to be genuine, and compare the same with the note in controversy, which the Court refused, but said to the jury that they might use their own spectacles. This, it is insisted, is error. If, as we infer the fact to be, from the permission asked and the peremptory refusal of the Court, the jury desired the use of magnifying glasses to aid them in the examination of the signatures submitted to them, we are unable to see any satisfactory reason why they should not have had them. The nature of the evidence submitted to them, with the differences testified to in the signatures submitted, required of the jury close and careful inspection and comparison of the several signatures.

Several witnesses were allowed to testify as to the resemblance and dissimilarity of some of the letters in the signature to those of the other signatures in the case; so also they testified as to whether the two "n's" in "Kannon" were joined together or disconnected. Other peculiarities were referred to, some of which were scarcely discoverable to the naked eye. By means of

a magnifying glass the peculiar features and character-istics of each signature could be much more clearly seen and understood.

Why a jury should not be allowed the use of means to aid them in the examination and comparison of hand-writing submitted to them to be examined and compared, which have been found by the experience of bankers and business men of the highest utility for such purpose, we are unable to understand.    There is no more mystery in such a glass  than in ordinary spectacles in daily use.    An unlearned man, other things being equal, can see through such glasses quite as well as the most learned.

The jury, under the agreement of the parties, were charged with the duty of weighing the testimony of the witnesses, and of investigating for themselves, by inspection, all the signatures submitted to them, and founding their verdict upon the testimony and the conclusions they might draw from a careful inspection and comparison of the signatures.

If the means were at hand and offered to them, and they desired to avail themselves of them to facilitate such inspection, it was error to refuse to allow them the use of such means.

For these reasons we think the Circuit Judge erred in his ruling on this point, and we reverse the judgment and remand the cause for a new trial.