SOUTHERN RAILWAY COMPANY et al. v. JAMES HOOPER, Administrator.

Eastern Section.   August 6, 1932.

Petition for Certiorari denied by Supreme Court, October 15, 1932.

Cooke, Swaney & Cooke, of Chattanooga, for plaintiff in error.
W. Cory Smith and Whitaker & Whitaker, all of Chattanooga, for defendant in error.

PORTRUM, J.   The Southern Railway Company, the Alabama-Great Southern Railway Company, and the C. N. O. & T. P. Railway

Company, together with W. J. Robinson, a special police officer under the employ of the railway companies, are sued in court for the injury which caused the death of the plaintiff's intestate, Willie Mathis, a negro boy, about twenty years of age, who was shot by the special officer in an attempted arrest upon the yards of the companies. The declaration contains two counts; the first alleging in substance, that on the day and date alleged the plaintiff's intestate, Willie Mathis, together with another, were standing in the yards of the defendant companies, late in the afternoon, without any evil designs or unlawful purpose, or interfering in any way with the rights and privileges of the railroad companies, when the defendant, W. J. Robinson, as an agent of the said companies, and acting within the scope of his authority, and with the purpose to protect the companies' property and in furtherance of their business, approached Willie Mathis and his companion, who were standing together and conversing, and without word or warning needlessly and wrongfully commanded them to "hands up," and thereupon Willie Mathis, being frightened by such unlawful command, turned and started to run, when said special officer, W. J. Robinson, commanded him to hault, and immediately and while Mathis was in the act of getting away without any show or purpose on his part to injure or in anywise threaten the said special officer, the special officer began needlessly, wantonly and wilfully to fire upon him with a pistol, one shot taking effect in the back, and another in the rear of the shoulder, and another in the side of plaintiff's intestate, from the effects of which he died the following morning, after suffering great physical pain and mental anguish.

The second count of the declaration alleges:

"That said special officer, W. J. Robinson, has a well-known and open and notorious record for violence and ill-treatment to other people, has wrongfully shot and killed some eight or ten people before and while in the employment of said defendant railway companies. And plaintiff avers that said defendant railway companies knew of or should have known of this violent record of the defendant, W. J. Robinson, and carelessly, wrongfully and negligently employed and retained him in their employment, well knowing at the time, or could have known by the exercise of due care, that the said W. J. Robinson was an unfit and improper person to have in their employment in the capacity of special officer, and due to such negligence, and as the proximate cause of the death of and without fault on the part of the plaintiff's intestate, he was killed as alleged in the first count of this declaration, and the plaintiff damaged in the sum of $25,000 as aforesaid, and in this suit."

The second count was not attacked by a demurrer or otherwise, but a plea of the general issues was entered as to both counts. The

jury returned a general verdict in favor of the plaintiff and assessed the damages at the sum of $5000. The defendants assign numerous errors in their motion for a new trial, but the motion was overruled and an appeal has been prosecuted to this court.

At the conclusion of the plaintiff's evidence the defendants made a motion for a directed verdict, and again renewed the motion at the conclusion of all the evidence. The act of the court in overruling this motion is assigned as error in this court. Counsel impliedly, or tacitly admits that this assignment is not well taken, by their repeated attempt to confine this court to a review of the evidence introduced by the plaintiff, and the motion made at the conclusion of the plaintiff's proof for a directed verdict. If counsel desires to rely upon the weakness of the plaintiff's suit, they must not waive their motion by the introduction of proof in defense. The reviewing court looks to all the proof on file to determine if the plaintiff has made out a case. This rule is too well settled to require further discussion.

The deceased, Willie Mathis, and his companion, Willie Favors, were returning from their work late in the afternoon of March 25, and were passing over a path and through the yards of the railway companies, when they stopped and began a conversation by or near a stack of railway ties in the yards. While they were standing here it attracted the attention of Robinson, the special officer. He then went down the track to examine the doors on a car (he was patrolling the track to protect the companies against car thieves), he was engaged in the examination of the car or cars about fifteen minutes and then went to investigate the presence of these negroes on the yards. He came up with them and ordered them to throw up their hands, and the fleeing negro to halt, and since the negro did not halt he shot him three times in the back with a 45-calibre pistol. He grabbed the other negro in his belt and held him securely, and until others came to the scene. This negro was then taken to the police station and locked up, where he remained for a week or ten days, and was finally released without formal charges being entered against him, but not until he had made a written statement to the claim agent of the railway companies, which is filed by the companies as evidence in this case.

Robinson's defense is that he acted in self-defense; that when he came upon the negroes Mathis was crouched down with a drawn pistol presented towards him, and that he then drew his pistol and shot in his necessary self-defense. He introduces in evidence a bright 32-calibre pistol, which he says was picked up by the side of Mathis, and also a blackjack said to have been found near the place where the negro fell when shot. The jury found this issue against the insistence of the defendants, and there certainly is evi-

dence to support the finding of the jury. It is not reasonable to conclude that the negro would have had a pistol in one hand and a blackjack in another, or that he would have waited for the officer to arm himself and shoot before he attempted to shoot. And it is not possible to reconcile the fact that the negro was shot three times in the back with the officer's pistol.

However, the principal insistence is that the officer acted beyond the scope of his authority, since the negroes had committed no offense, and the officer was not authorized to make an unlawful arrest, and therefore the master is not responsible for the unlawful act of the officer. We think the evidence establishes that the officer was acting within the scope of his employment. He was asked this question on the witness stand, and made this reply:

"Now, then Mr. Robinson, on the day in question when you killed this man, were you there in the exercise of your duty, under your employment and were undertaking to arrest these men because of the position you held with these companies? A. Yes. My business was to find out what they were doing over there."

And he made a statement to Judge FLEMING that he thought these were the parties who had broken into the car. His suspicion had been aroused because of the position of these boys and the pile of cross-ties. Under these circumstances we think it was a part of his duty to investigate, and had he neglected to investigate such condition his services would have been of small value to his employers. In order to perform this duty he attempted to arrest them, and did effectively arrest one of them by grabbing and holding him by his belt. He placed this one in jail as above stated. Robinson stated that he was undertaking to arrest the men when he replied to the question as recorded above. This refutes the argument that there is no evidence that Robinson was attempting to make an arrest at the time of the shooting.

We think the evidence demonstrates clearly that the act was done in the furtherance and discharge of the master's business and was within the scope of the employment. This case falls, in our judgment, squarely in the rule announced in the case of Terry v. Burford, 131 Tenn., 451, 175 S. W., 538. We are of the opinion the trial judge correctly overruled the motion for a directed verdict.

We notice that the assignment of error is based solely upon the failure of the trial judge to sustain the motion for a directed verdict made at the conclusion of the plaintiff's evidence. This motion was waived by the introduction of evidence by the defendants as hereinbefore stated, but our discussion is applicable to the assignment that there is no evidence to support the verdict, and the court did not err in overruling this ground assigned in the motion for a new trial.

There are some assignments of error based upon excerpts taken from the court's charge, on the theory that these excerpts do not state that the officer's act must be within the real or apparent scope of his authority, but taking the charge as a whole we think this criticism is not justified. We have examined the assignments based upon the court's charge and without going into an extended discussion we will content ourselves by saying that we find no reversible error, nor anything calculated to injure or prejudice the defendants' case. The fourteenth and fifteenth assignments are not a part of the motion for a new trial, and the questions presented in these assignments are not open to review here.

Under the second count of the declaration the plaintiff introduced proof to establish the matters alleged in the count. The plaintiff upon cross-examination of the defendant Robinson, elicited from him admission that he had shot numerous persons while in the employ of the railways, and that he was unable to say who had died as the result of his shooting. He stated that he was unable to state how many he had shot, but he denied that he had shot and killed some with whose murder he was accused. Other witnesses took the stand and testified to numerous persons shot both prior and since his ten years employment as special officer of the railway companies. And it was further shown that the railway companies had been required to respond in damages, by suit, as the result of this officer shooting immature persons. A greater part of this evidence was excepted to on the theory that other negligent acts could not be shown to establish the negligent acts complained of in this suit. This evidence was not introduced for this purpose, but to establish the fact that the defendant companies had under their employ, and had employed with knowledge of the fact, or with knowledge sufficient to bring the fact home to them, that the person under their employment was an unsuitable person for the employment he was engaged in. When evidence is applicable and pertinent to one issue in a lawsuit, it will not be excluded because inapplicable to another issue, but upon exception if properly directed to the point complained of, the court will direct the jury to what issue the evidence is applicable. The court should not have excluded this evidence under the general exception of the railway companies, and in the absence of a request from the defendant Robinson, it was not reversible error for him to fail to direct the jury to confine this evidence to the issue raised under the second count of the declaration. But counsel say the railway companies were at liberty to employ a man of this known character, and it was of no concern of the plaintiff's intestate. We quote:

"The railroads owed no duty to Willie Mathis as to the character of man they employed to guard their property. There was no contractual relation between Mathis and the rail-

roads, and whether the railroads had a quarrelsome man or a mild manner policeman on their property was no concern of his. He may have been the mildest mannered policeman who ever fired a pistol, and he may have had occasion to shoot numerous other people on numerous former occasions, and may have been perfectly within his rights and justified on those occasions.''

This is a plausible statement, but it will not bear a critical analysis. Every man owes to his neighbor a duty to act toward him with due care, and the act of the agent in law is the act of the principal. If a principal employs an agent to act with or against third parties, and knowing the agent from reputation and from actual act to be a man who is not accustomed to act with due care, then we think the principal has violated a duty due to third persons. This principle is likewise announced in the case of Terry v. Burford, supra, in the opinion the court quoted at length from a case where the facts were; the master sent his servant to take possession of furniture forfeited to him by a nonpayment of the price, with instructions to the servant not to commit an assault in repossessing the furniture, knowing that the errand was likely to excite indignation and resistance, he is liable for a wilful assault by the servant committed in getting the property. The servant was expressly instructed not to commit an assault, and in doing so he exceeded his authority and was not acting within the scope of the authority, but nevertheless the master was held liable because the errand was calculated to bring about this situation, and the master owed a duty to the person assaulted to send a servant who would likely obey his instructions.

If the railway companies employ a man whom they know will shoot to kill upon no greater provocation than an attempt to escape, then we think they have violated their duty to the public to use care in the employment of their servant who is to deal with the public. To hold them under no duty on this score might increase the demand for man-killers as special police.

The answer of the company to this specification of negligence is that they used due care in the selection of their agents, which would include an absence of notice of the agent's reputation as a man-killer. This evidence is pertinent to bring home knowledge to the company and notice that the agent was an improper person for this duty. He may have been justified in killing many, but this was not a collateral fact under this issue, and his justification was open to proof by the companies. Under the issues the court would not have been justified in excluding this evidence.

The judgment of the lower court is affirmed with costs.

Thompson and Snodgrass, JJ., concur.