## MONDAY et al. v. MILLSAPS.
## MONDAY et al. v. GATLIN.—264 S. W. (2d) 6.

Eastern Section. June 23, 1953.

Petition for Certiorari denied by Supreme Court, October 19, 1953.

374

Fowler, Long & Fowler, Foster D. Arnett, and Wilbur W. Piper, of Knoxville, for plaintiffs in error, Monday Trucking Co.

Poore, Cox, Baker & McAuley, of Knoxville, and Floyd H. Brown, of Clinton, for Roland Prince, Adm'r of Estate of Thomas G. Clynes.

Wilson & Joyce, of Oak Ridge for defendants in error.

HOWARD, J. These consolidated actions for personal injuries grew out of an automobile accident which occurred on U. S. Highway 70, at a point about one mile east of Ozone, Tennessee, on June 21, 1951, at about 12:30 p. m., when a Buick automobile owned by C. Boyd Jones and driven by Thomas G. Clynes, collided with a Chevrolet truck owned by Lewis B. and Orville C. Monday, d/b/a Monday Trucking Company, and operated by one of their employees, Kenneth Ross. The automobile was traveling downgrade in an easterly direction toward Rockwood, while the truck was traveling in the opposite direction toward Crossville. The accident occurred on the north side of .a curve in the highway when the Buick skidded from the right to the left into the path of the approaching truck, the left side of the car striking the front end of the truck. The curve in the highway was to the south, and

the pavement at the point of the accident was from 24 to 26 feet wide, was in the process of being resurfaced, and was described as "very slick".

Plaintiffs, David Gatlin and Ronald F. Millsaps, were guests in the Buick, Gatlin riding on the right side of the front seat and Millsaps on the left side of the rear seat. Others riding in the car at the time included Jones, the owner, who was sitting on the right side of the rear seat, Clynes, the driver, who was fatally injured, and W. Howard Hildreth, who was sitting on the front seat between Gatlin and Clynes. They were all engaged in the insurance business at Oak Ridge, and were returning to their homes after attending an insurance convention at Nashville. At the time of the accident the Trucking Company was engaged in a state paving contract on Highway 67, south of Rockwood, and the truck involved was returning empty to the asphalt mixing plant near Crossville for a load of asphalt.

Each of the original declarations contained four counts, Millsaps suing the defendants for $75,000, and Gatlin for $5,000.

By the first counts the plaintiffs sued the Trucking Company, alleging that the truck driver prior to and at the time of the accident was guilty of both common law negligence and gross negligence. These counts allege in substance that plaintiffs were riding as guests in the Buick automobile, and that previous to the accident it had been raining and the pavement of the road was slick and slippery; that as the automobile approached "a rather sharp curve" it skidded or went out of control, and that the defendant's "employee was or should have been thoroughly familiar with the highway at this point, having traveled over it innumerable times, and was or should have been fully aware of the dangerous condition

of the said road, the numerous sharp curves thereon and the tendency of the road to become slick when wet, but nevertheless the said * * * employee disregarding these conditions drove the said truck at a high and dangerous speed and without having the truck under control and without proper regard for other persons or vehicles upon the highway and without proper lookout for such other persons or vehicles. While so operating the said truck, the driver and employee of the defendant, * * * saw or should have seen at a great distance the automobile in which the plaintiff was riding go out of control and skid, but nevertheless the said driver of the defendant's truck continued proceeding at a high and dangerous rate of speed, proceeding straight into the automobile in which the plaintiff was riding as a guest without making any due effort to avoid the accident and carelessly, wrongfully, wantonly and with gross negligence propelled his truck into and against the automobile in which the plaintiff was a passenger and guest with terrific force.''

Then follows a description of the plaintiffs' injuries, which will hereinafter be considered.

Under the second counts plaintiffs allege that the driver for the Trucking Company was driving the truck recklessly and dangerously, and at a high rate of speed in excess of 40 miles per hour, the speed limit for trucks, in violation of Code Sections 2681, 2682, 2682.1. All Sections refer to Williams' Tennessee Code.

Under the third counts the plaintiffs sued Dorothy B. Clynes, Administratrix of the estate of Thomas G. Clynes, on grounds of common law negligence. These counts allege in substance that plaintiffs were riding as guests in the Buick automobile, and that the driver, Thomas G. Clynes, ''while driving in a negligent and careless manner, without due caution considering the condition of the road

and surrounding circumstances, lost control of the automobile and skidded sideways onto the wrong side of the highway, whereupon the automobile collided with great violence with the truck of the defendants, the Monday Trucking Company, being driven in the opposite direction in the manner described and set forth in the First Count of this declaration.''

Under the fourth counts the plaintiff sued the Clynes estate alleging that the driver of the Buick was operating the car dangerously and recklessly, in violation of Code Sections 2681, 2682.

It appears that after process was served on Lewis Monday and the Clynes estate, Monday filed a plea in abatement to each of the suits on the ground that he and his brother were residents of Knox County, and that inasmuch as all the defendants were not alleged to be joint tort feasors there was a misjoinder of parties defendant, and that he and his brother could not be required by counterpart summons to litigate wrongs in Anderson County where the declaration failed to allege that the Anderson County defendant was not jointly liable.

To each of the declarations the Clynes estate filed a demurrer on grounds (1) misjoinder of parties defendant, and (2) that counts 1 and 2 of the declaration were inconsistent with counts 3 and 4. Thereupon the plaintiffs upon application were permitted by the court to amend each count of their declarations by alleging that the accident resulted from the ''combined and concurrent'' negligence of each of the defendants, and the amount sued for by Millsaps was increased from $75,000 to $100,000. (Later during the trial the amount was increased, over objections of the Trucking Company, to $115,000.) Plaintiffs further amended the third count of their declarations by alleging that the driver of the Buick, ''while driving in

a negligent and careless manner, without due caution and at an improper speed considering the condition of the road and surrounding circumstances and by improper application of the brakes and turning of the wheels, lost control of the automobile and skidded sideways on the wrong side of the highway, whereupon the automobile collided with great violence with the truck of the defendants, the Monday Trucking Company, being driven in the opposite direction in the manner described and set forth in the First Count of this declaration."

The plea in abatement and both demurrers were overruled, each of the defendants duly preserving exceptions. Later the plaintiffs filed amended declarations which contained all of the averments and allegations of the original declarations and amendments thereto.

The defendants, Lewis B. Monday, et al., filed a plea of general issue, and being required upon motion to plead their defenses specially, they specifically denied that plaintiffs were guests in the Buick which, it was admitted, collided with one of their trucks operated by one of their employees. They admitted that the accident occurred on a south curve in the highway when the Buick automobile, which was traveling downgrade in an easterly direction, got out of control. They averred that the Buick got out of control because it was traveling at a high rate of speed; that when the brakes were applied it skidded onto the north side of the highway "crosswise of traffic going in a westerly direction" in front of the approaching truck. They specifically denied acts of negligence charged to their driver, Kenneth Ross, and averred that the truck was at all times on its proper side of the road and traveling at a lawful and reasonable rate of speed; that their driver upon seeing the Buick out of control applied his brakes immediately in an effort to

stop the truck and avoid the accident. They further averred that the accident was solely due to the negligence of the driver of the Buick in which the plaintiffs were riding, and to whom the plaintiffs made no protest. They denied that the highway was wet or slick, or that it had been raining, or that there was any negligence combined or concurrent on their part or on the part of their agent.

The Clynes estate, through Dorothy B. Clynes, Administratrix, filed a plea of general issue and numerous special pleas in which it was admitted that her husband, Thomas G. Clynes, who was killed in the accident, was the driver of the Buick car. She averred that the highway at the point of the accident was being resurfaced and that following a rain it was extremely slick, and that her husband was without knowledge of these facts and was without fault in the operation of the car; that the plaintiffs, who were riding in the car, were guilty of negligence in failing to exercise ordinary care for their safety and in failing to warn the driver of the dangerous condition of the highway. She specifically averred that "the Monday Trucking Company was guilty of negligence in the operation of their said truck and such negligence was the sole, prime and proximate cause of the alleged accident * * *." She denied that her husband was guilty of any negligence which caused or contributed to the accident.

Plaintiffs filed a general replication to the special pleas under which it was insisted, among other grounds of replication, that the doctrine of the last clear chance applied, and that the driver of the truck failed to exercise ordinary care as he saw or by the exercise of reasonable diligence and care could have seen that the Buick was in a place of peril and about to be struck, and in failing to apply his brakes and stop same or slacken its speed or so guide and steer it so as to avoid the collision. The

plaintiffs also in their replication charged that the driver of the Trucking Company was guilty of gross negligence and wanton disregard of the rights and safety of other persons and vehicles on the highway.

Upon the regular Circuit Judge recusing himself, the Honorable Chief Justice of the Supreme Court designated the Honorable R. W. Smartt, retired Circuit Judge, to preside at the trial of the cases.

On February 22, 1952, Mrs. Clynes resigned as Administratrix of her husband's estate, and Roland Prince was appointed by the Anderson County Court as Administrator in her stead. On the morning of the trial, February 25, plaintiffs moved to be allowed to amend their declaration so as to show these facts and to name Prince, the newly appointed Administrator, as a party defendant in the cases. After considerable delay, the amendments were finally allowed but over the objections of both the Trucking Company and the Clynes Estate. The Trucking Company also objected to the regular jury panel, because several of the jurors had previously served on a jury in a case involving personal injuries where a substantial verdict was returned for the plaintiff. This motion was overruled. There were numerous other amendments, objections and motions to strike before the cases finally proceeded to trial.

At the conclusion of all the evidence, motions made on behalf of the defendants for peremptory instructions were overruled, and the trial resulted in the following verdicts in favor of the plaintiffs: $109,000 for Millsaps, and $1,000 for Gatlin.

Thereafter, upon the hearing of the motions for a new trial, a remittitur of $19,000 was ordered by the trial judge on the Millsaps verdict, which was accepted under protest, and the motions were overruled. Both defend-

ants have appealed to this Court and a total of 46 errors have been assigned, which will hereinafter be considered. Plaintiff Millsaps has also filed a petition for writ of error in which he complains that the Court erred in ordering a remittitur of $19,000.

Inasmuch as the 10 assignments of error filed by the Clynes Estate, and 10 of the 36 assignments filed by the Trucking Company involve the same questions, these assignments will be considered together but not in their numerical order.

By assignments 1, 2 and 3 of the Clynes Estate, and assignments 1 and 2 of the Trucking Company, it is insisted that there was no evidence to support the verdicts, and that the trial court erred in refusing to direct verdicts for the defendants made at the conclusion of all the evidence. While these assignments involve a review of the evidence, such review is only to determine whether there is any substantial evidence to support the verdict. Under our decisions, we are required to " 'take the strongest legitimate view of all the evidence to uphold the verdict, to assume the truth of all that tends to support it, to discard all to the contrary, and to allow all reasonable inferences to sustain the verdict.' " D. M. Rose & Co. v. Snyder, 185 Tenn. 499, 206 S. W. (2d) 897, 901.

With reference to directing a verdict in tort actions, our Supreme Court, in Jackson v. B. Lowstein & Bros., 175 Tenn. 535, 136 S. W. (2d) 495, has said:

"Appellate courts should not lightly assume primary duty of determining liability or nonliability in actions of tort, but should leave such duty with the jury as triers of facts, and if they act arbitrarily courts should then supervise their action."

Where only one conclusion can be reasonably reached from the evidence and inferences is it proper for

a trial court to direct a verdict. Coca Cola Bottling Works v. Selvidge, 4 Tenn. App. 558; Supreme Liberty Life Ins. Co. v. Pemelton, 24 Tenn. App. 576, 148 S. W. (2d) 1.

■ The rule applicable here was succinctly stated in a comparatively recent decision by the Middle Section of this Court, as follows:

"As said so often, this rule requires trial judges and appellate judges, in considering a motion by defendant for a directed verdict, to look to all the evidence, to take as true the evidence for plaintiff, to discard all countervailing evidence, to take the strongest legitimate view of the evidence for plaintiff, to allow all reasonable inferences from it in his favor; and if then there is any dispute as to any material determinative evidence, or any doubt as to the conclusion to be drawn from the whole evidence, the motion must be denied." Lackey v. Metropolitan Life Ins. Co., 30 Tenn. App. 390, 206 S. W. (2d) 806, 810.

With the foregoing rules in mind, we have painstakingly given consideration to the great mass of evidence introduced, and it is our conclusion that the cases were properly submitted to the jury, and that the verdicts are amply supported by the evidence.

It appears that the highway had been treated with an undercoat of asphalt, consisting of tar, fine rock etc., and because of intermittent showers the pavement was wet in spots and very slick; that Ross, the truck driver, was familiar with the road, had made two or three other trips that day, and knew of its dangerous condition; that two or three other accidents had not only occurred that day, but that several accidents had previously occurred after rains while the pavement was still wet.

It was conceded that the truck was traveling upgrade, and that the pavement for several feet west of the point of the collision was not only wet but slick. There was credible evidence, however, that the truck approached on dry pavement, and that its dual wheels skidded for a distance of more than 100 feet before striking the Buick.

Plaintiffs introduced in evidence a surveyors map showing the curve in the highway and environs. This map was lettered on the north side of the pavement from A on the west to U on the east, and was drawn on a scale of 50 feet between letters. On the north side of the pavement for a distance of 150 feet east of the point of the collision was a gradually sloping shoulder ranging in width from 3 to 10 feet. At the point of the collision the shoulder narrowed to a width of less than 3 feet, on a fill from 4 to 6 feet above an adjoining field. On the south side of the pavement was a ditch and a sloping bank several feet high.

According to the plaintiffs' evidence, the Buick approached the curve at an estimated speed of from 40 to 60 miles per hour, and as it entered the curve the driver applied his brakes with such force as to cause the car to "jerk" and skid to the left to the north side of the pavement; that after skidding sidewise for approximately 150 feet the left side of the Buick near the center, struck the front of the approaching truck; that after the impact the Buick was standing across the north lane of the pavement headed south, and the truck was on its side of the highway in its proper lane and headed west. The impact occurred near a sassafras tree standing on the north side of the highway at point I indicated on the map.

Gatlin, Hildreth and Jones all testified that when they first saw the approaching truck it was at a point on the highway indicated on the map as being between P and R,

a distance of from 500 to 600 feet away; that at that time the Buick was at a point indicated on the map between the letters E and F where the brakes were applied and the car started skidding, and that this was at least 150 feet west of the point of collision.

Ross, the driver of the truck, admitted he first saw the Buick in the curve when it was about 325 feet away, at which time he apparently made no effort to check his speed, though traveling upgrade, or pull to the shoulder of the road where he could have stopped safely without danger to either himself or the truck. He testified that his speed was about 30 miles per hour, and when asked why he failed to turn the truck to the right upon the shoulder, he denied that the shoulder was of sufficient width to permit him to do so safely. Plaintiffs' proof, however, showed that for a distance of 150 feet east of the point of impact there was a gently sloping shoulder more than 8 feet in width along the north side of the pavement.

Plaintiffs introduced expert testimony that to lay down dual skidmarks 100 feet in length on a dry pavement with all four wheels skidding, the truck's minimum speed was 48 miles per hour. This does not include the slowing effect of the impact which under the evidence could have accounted for a much greater speed.

■ In considering the evidence bearing upon the negligence of the driver of the Buick, we think there was sufficient evidence from which the jury could conclude that the driver was not using reasonable care. The rule is well settled that if there is any evidence tending to prove the acts of negligence complained of, the question must be submitted to the jury. Colonial Baking Co. v. Acquino, 20 Tenn. App. 695, 103 S. W. (2d) 613.

As previously pointed out, there had been intermittent showers and it was undisputed that Clynes had, just prior

to the accident, passed a "Slippery When Wet" road sign. Before entering the curve where the accident occurred, the undisputed evidence further showed that Clynes passed a truck at a speed estimated from 50 to 60 miles per hour.

William T. Gunter, a former employee of the Monday Trucking Company, testified that he was driving a truck load of asphalt from the mixing plant to the spreader when the Buick, just west of the curve, passed him going about 60 miles per hour; that he first saw the Buick from his rear view mirror, and knowing that the pavement just ahead was slick, held out his hand and signalled for the driver to slow down but that his signals were ignored. He said that after the Buick passed and had returned to its right lane, the rear brake lights flashed and immediately the car started skidding to the left; that it skidded on around the curve out of his view, and that he did not actually see the accident.

There was no evidence that Clynes, previous to the accident, had been driving in a careless and reckless manner, nor was there any evidence that either of the plaintiffs was negligent or knew of the slippery condition of the road.

From the evidence which we have reviewed at considerable length, we think that the jury was fully justified in finding that the accident was the result of the joint and combined negligence of both drivers. The jury, as the triers of facts, could have found that neither of the drivers was on the proper lookout ahead, nor that either had his respective vehicle under proper control. Under the proof, the jury could reasonably conclude that the driver of the truck was driving at a speed in excess of the statutory speed limit of 40 miles per hour, Code Section 2682.1, and excessive under all circumstances; that he

failed to apply his brakes as soon as he saw or by exercise of reasonable care should have seen the perilous position of the Buick; that if the driver had been on the lookout and had been driving at a lawful and reasonable rate of speed he could have slowed down or stopped the truck in time to avoid the collision.

Every person is under a duty to exercise his senses and diligence in his actions in order to avoid injury to others. Smith v. Roane-Anderson Co., 30 Tenn. App. 458, 207 S. W. (2d) 353.

In American Jurisprudence, it says:

"One who sees another in imminent peril from which he cannot extricate himself should so act as not to increase the peril, and if he does act in a manner to increase the danger after he has knowledge thereof it is negligence." 38 Am. Jur., Sec. 23, p. 666.

"Liability for negligence may be predicated upon the lack of foresight or of forethought which is exhibited where one remains in voluntary ignorance of facts respecting the danger inherent in the particular act or instrumentality involved, concerning which a reasonably prudent person would become advised, on the theory that such ignorance is the equivalent of negligence. Inattention to the duty to exercise care in a situation which reasonably may be regarded as hazardous is negligence, notwithstanding the act or omission involved would not in all cases, or even ordinarily, be productive of injurious consequences." Vol. 38, Sec. 24, p. 668.

Whenever one person is by circumstances placed in such a position with regard to another that it is obvious that he must use due care to avoid injury to such other person, the duty at once arises to exercise care to avoid the danger commensurate with the circumstances. Wells

v. Weed, 197 Minn. 464, 267 N. W. 379; Dean v. Hershow-
itz, 119 Conn. 398, 177 A. 262, 266; Smith Electric Co. v.
Hinkley, 98 Fla. 132, 123 So. 564, 566.

By assignments 27 and 28, the Trucking Company
complains that the trial court erred in not sustaining its
plea in abatement, because (1) the original declarations
did not charge said defendant and the Clynes Estate with
being joint tort feasors, and (2) the court erred in allow-
ing the plaintiffs, after the plea in abatement was filed,
to amend their declarations to sue the defendants jointly.
It is argued that the court should have sustained the
plea in abatement for the reason that the owners of the
Trucking Company, being non-residents of Anderson
County, could not be required by counterpart summons to
litigate wrongs in said county where the declarations
failed to allege that the defendants were jointly liable.
We think that the foregoing objections were completely
obviated by the amendment filed to each count of the
plaintiffs' declarations alleging that the accident resulted
from the ''combined and concurrent negligence'' of the
defendants, and that the amendments were properly
allowed. Code Sec. 8713; Tenn. Procedure in Law Cases,
Sec. 523, p. 205; Caruthers History of a Law Suit, 7th
Ed., Sec. 186, pp. 226, 227.

Assignment 5 of the Trucking Company com-
plains because the trial court, on the morning of the trial,
allowed the plaintiffs to amend their declarations sub-
stituting Roland Prince, the newly appointed adminis-
trator of the Clynes Estate, as a defendant in lieu of
Dorothy B. Clynes, the administratrix who had resigned.
This amendment was in no way prejudicial to the Truck-
ing Company, and was properly allowed. Code Secs.
8711, 8713.

Assignment 29 of the Trucking Company complains because the plaintiff Millsaps was allowed to amend his declaration on two different occasions after suit was filed, increasing the amount sued for before the trial from $75,000 to $100,000, and during the trial from $100,000 to $115,000. On application seasonably made, a declaration may be amended so as to increase the amount of damages claimed or of the recovery sought, and the granting or refusing of such amendment is a matter resting within the sound discretion of the court. Code Sec. 8711; Chattanooga Ice Delivery Co. v. George F. Burnett Co., Inc., 24 Tenn. App. 535, 147 S. W. (2d) 750; Caldwell v. Hodges, 18 Tenn. App. 355, 77 S. W. (2d) 817.

Assignment 30 of the Trucking Company complains because the trial court, upon oral motion, did not quash the jury panel on the ground that several of the jurors had previously served on a jury involving personal injuries where a substantial verdict was returned for the plaintiff. The mere fact that a jury panel has heard another or other personal injury cases does not disqualify it from further service. To so hold would require a new jury panel for each personal injury case tried. We find no authority which would support this assignment, and none has been cited by the defendant. Furthermore, it is well established in this state that a motion to quash a jury panel must be in writing. Mahon v. State, 127 Tenn. 535, 156 S. W. 458; Tennessee Procedure in Law Cases, Sec. 1159, p. 441.

Assignment 6 of the Trucking Company complains because the trial court admitted in evidence over its objections the testimony of William Cree, an expert witness who testified regarding minimum speeds from skidmarks. It appears that this witness had been employed for four years at Oak Ridge, as Chief of the Ana-

lytical Services and assistant to the Traffic Engineer, where his duties involved a reviewing of all traffic accidents, reports, etc., for that area. He said that since 1936 he had investigated and reviewed approximately 6,000 cases, and since being at Oak Ridge had investigated 50 accidents and reviewed approximately 3,500 reported accidents; that in 1944 he completed a course at Northwestern University on traffic accident investigations, where he had as an instructor Dr. Stan Baker, an eminent authority on traffic accidents, and that he had subsequently run numerous tests on skidmarks in connection with the U. S. Army while on special duty in the Caribbean and Panama Canal Zone; that in 1950, at the request of the FBI, he taught "Determining Minimum Speed from Skidmarks" to the Knoxville Police, and in 1951, on the invitation of the Chief of the Tennessee Highway Patrol, he gave the same course to the Officers of the Highway Patrol at Nashville. Upon being asked a hypothetical question based upon matters previously testified to by other witnesses, Cree testified that from the 100 feet of skidmarks made by the dual wheels of the truck, its minimum speed was not less than 48 miles per hour and was probably more. Under the circumstances we find no merit in this assignment, as the qualification of a witness as an expert is a matter largely within the discretion of the trial court whose ruling in respect thereto will not be reversed upon appeal unless clearly erroneous and unless there was an abuse of discretion. McElroy v. State, 146 Tenn. 442, 242 S. W. 883; Keys v. Keys, 23 Tenn. App. 188, 129 S. W. (2d) 1103. The law is well settled that an expert witness may give his opinion as to the speed of an automobile from the length of its skidmarks. Cheek v. Fox, 7 Tenn. Civ. App. 160; 20 Am. Jur. 805,

p. 678, 32 C. J. S., Evidence, Sec. 533, p. 236; Vol. 9, Blash-field's Cyc. Automobile Law, Sec. 6238, p. 710.

■■ Assignment 7 of the Trucking Company complains because the trial court excluded as evidence Exhibit No. 32, a photograph of the highway taken at the scene nearly 6 months after the accident, and after all vehicles, skidmarks and other identifying physical evidence had been removed or obliterated. By the introduction of this exhibit it seems that the defendant was attempting to reconstruct the scene of the accident by photographing pieces of paper and other markings at various locations where the witness testified that the various vehicles were located immediately following the accident. An actual photograph of the scene made shortly after the accident had already been introduced in evidence which, it was admitted, fairly portrayed the scene and the position of the cars and environs. Generally, photographs are inadmissible where there have been material changes in surroundings and conditions. Black v. Lone Mt. Lumber Co., 7 Tenn. Civ. App. 151; 20 Am. Jur. 731, p. 611. However, the admissibility of the photograph in question was a matter to be determined by the trial court in the exercise of his sound discretion. 32 C.J.S., Evidence, Sec. 716, p. 625.

■ Assignment 8 of the Trucking Company complains because the trial court excluded as evidence a portion of the testimony of one of the defendant's witnesses, Roy Potter, that immediately after the accident Clynes told the witness "It was my fault." The admission of this testimony was not objected to by the plaintiffs but was objected to by the Clynes Estate on the grounds (1) that the maker of the statement was not identified as being Clynes, and (2) because the statement was a conclusion and not a fact. The statement, if admissible, was cumula-

tive and its exclusion was not prejudicial, as another witness for the Trucking Company, DeWitt Hodge, had previously testified, without objections, that he heard Clynes say, "It was my fault, I was scooting on the curve." Code Sec. 10654.

By assignments 4 of the Trucking Company and 6 of the Clynes Estate, the defendants complain because the trial court permitted the plaintiffs to introduce and read in evidence a certified copy of an order from the County Court of Anderson County showing the resignation of the Administratrix and the appointment of Roland Prince as her successor. This order was introduced as Exhibit 44 on cross-examination of Mrs. Clynes, and was read to the jury over the sole objections of the Trucking Company. According to the record, the Clynes Estate made no objection to either the introduction or reading of the order, but did announce an "exception" after the court overruled the Trucking Company's objections. On just what ground the Clynes Estate based its exception, the record does not disclose. Though not specifically pointed out to the trial judge when the order was read, it is now argued that the following portion of the order was prejudicial to the defendants:

"It appearing to the Court that all of the personal assets of the estate of Thomas G. Clynes, which have come into the hands of Dorothy B. Clynes, Administratrix, were awarded to the said Dorothy B. Clynes in her individual capacity by this court by an order and decree rendered by and filed with this court on August 3, 1951, same having been awarded her as a year's support and exempt property accruing to her as head of the family, to all of which she was entitled under the law as the surviving widow of Thomas G. Clynes; and it further appearing that there are no

assets of the estate of Thomas G. Clynes which are chargeable to the said Dorothy B. Clynes in her capacity as administratrix of said estate.''

Inasmuch as it appears that the introduction of the order complained of did not in any way affect the liability of the Trucking Company, further consideration of this defendant's insistence is unnecessary.

At the outset of the trial, it appears that the Clynes Estate objected to the plaintiffs amending their declarations making Roland Prince, who had succeeded Mrs. Clynes as Administrator, a party defendant to the suits. Therefore, the introduction of the order was admissible to show these facts and to prove that Prince was the duly appointed and qualified Administrator of the Clynes Estate. Moreover, when documentary evidence contains matters that are properly admissible, a general objection to the whole document is insufficient. 53 Am. Jur., Sec. 140, p. 125; Shinners v. Proprietors of Locks & Canals, 154 Mass. 168, 28 N. E. 10, 12 L. R. A. 556.

By assignments 3 and 33 of the Trucking Company and 7 of the Clynes Estate, the defendants complain because the trial court did not, upon their motions, declare a mistrial because of alleged improper remarks made by plaintiffs' attorney in his closing argument to the jury. No objections were made at the time of the alleged improper remarks, and defendants' motions were made only after the argument was completed, the court had charged the jury and it had retired for its deliberations. Under the circumstances these assignments cannot be considered, because the defendants' motions and objections came too late. The rule is well established in this state that objectionable argument or improper remarks of counsel afford no ground for new trial where no objection is made or exception taken at the time of the argu-

ment. Smith v. State, 90 Tenn. 575, 18 S. W. 248; King v. State, 91 Tenn. 617, 20 S. W. 169; Morgan v. Duffy, 94 Tenn. 686, 30 S. W. 735; Ferguson v. Moore, 98 Tenn. 342, 39 S. W. 341; Sherman v. State, 125 Tenn. 19, 47, 140 S. W. 209, 216; Turner v. State, 188 Tenn. 312, 219 S. W. (2d) 188; Manning v. State, Tenn. Sup., 257 S. W. (2d) 6; Caruthers History of a Law Suit, Sec. 416, p. 455; Tennessee Procedure in Law Cases, Sec. 1354, p. 508; Rules of Court of Appeals, Rule 11, Subsec. (4).

By assignments 9, 11, 13, 16, 17, 18, 19, 20, 21, 22 and 26 the Trucking Company complains of portions of the trial court's charge to the jury. Many of these assignments are repetitious, and after carefully considering them in the light of the court's general charge, we have found them without merit.

Assignments 10 and 15 of the Trucking Company complains because the trial court under plaintiff's replication charged the doctrine of last clear chance. It is argued that the application of the doctrine presupposes negligence on the part of the plaintiffs, and there was no evidence to support this charge. It appears that the defendant not only plead contributory negligence specially, but also relied upon this defense in its prepared theory submitted to the court. The court also charged the law on contributory negligence. It is the duty of the court to study the pleadings and charge those matters supported by the evidence, and under the circumstances, the court did not commit error in charging the doctrine. In so charging the court not only placed the burden upon the plaintiffs of admitting or assuming their own negligence and avoiding the consequences, but also of showing an opportunity on the part of the defendant's driver to avoid the accident. In this respect the

charge was made more favorable to the defendant than to the plaintiffs.

Assignment 14 of the Trucking Company complains because the Trial Court charged gross and willful negligence. It is argued thare was no evidence to support this charge. We think there was sufficient evidence to support the charge. The fact that the truck was traveling on an upgrade of between 5 to 6 per cent, that its dual wheels skidded more than 100 feet, that there was expert evidence that its speed was probably more than 48 miles per hour, that the truck driver admitted that he knew the slickness of the road, that plaintiffs' proof showed that the truck was approximately 600 feet away when the Buick started skidding, together with the fact that there was a shoulder on which the driver when he first saw the Buick could have safely driven the truck, was sufficient to support the charge of gross and willful negligence, and it was for the jury under the charge and under the evidence to decide the issue. Furthermore, this was not reversible error as there were other counts in the declarations supported by material evidence. According to the record the jury returned general verdicts and the rule is well settled that a general verdict is not vitiated by the absence of proof on some counts of a declaration if there is evidence to sustain the averments of a single count. Code Section 8824. East Tennessee, V. & G. R. Co. v. Gurley, 80 Tenn. 46; Tennessee Cent. Ry. Co. v. Umenstetter, 155 Tenn. 235, 291 S. W. 452; Sledge & Norfleet v. Bondurant, 5 Tenn. App. 319; Allen v. Melton, 20 Tenn. App. 387, 99 S. W. (2d) 219; Taylor v. Cobble, 28 Tenn. App. 167, 187 S. W. (2d) 648.

Assignment 23 of the Trucking Company complains because the trial court refused to charge its request as to the duty of a sleeping passenger. This re-

quest was properly refused because the following portion assumed facts not in evidence:

"However, if Mr. Millsaps knew that the highway being traveled by the driver was wet and slick and crooked and winding and that the driver's physical condition was such that he was not alert and was unskilled in the driving of the Buick automobile in question and had been driving at a high rate of speed, then Mr. Millsaps would be guilty of negligence in permitting himself to fall asleep and thus make himself unable properly to warn the driver of negligent operation thereof."

Where a special request, as here, assumed facts not in evidence, it was properly refused. Berryman v. Dilworth, 178 Tenn. 566, 160 S. W. (2d) 899; Allen v. Melton, 20 Tenn. App. 387, 99 S. W. (2d) 219; Redding v. Hatcher, 14 Tenn. App. 561.

By assignments 24 and 25 of the Trucking Company, and 9 and 10 of the Clynes Estate, the defendants complain because of additional instructions which the trial judge gave when the jury, after deliberating for some time, returned to the court room on two separate occasions with requests. The first request was, "Did you charge us that we are only to consider who was at fault only at the point of the impact?" In response to this question, the court replied:

"No. The Court did not charge you that only to the fault of the impact. You can take that into account together with the other theories in this case that they are both at fault; the defendant Clynes Estate for what happened before the impact, and there was no insistence, as I get it, that the Clynes Estate was at fault at the impact. So it is insisted by the plaintiff that they both were at fault.

"Now, of course, if you find the Clynes Estate not at fault, of course it comes down to the question of the impact. The only ones that it is insisted were at fault at the time of the impact, actual time of the impact, would be the Monday Trucking Company.

"It is not insisted, as I get it, that the Clynes Estate was at fault at the actual impact, but it is insisted that they were at fault before the impact in that they let the car get in that condition and did not have it under control, and that was a continuing fault up to the time of the impact."

Immediately after the jury had retired, the Trucking Company announced that it excepted to that portion of the court's instruction "that there was no insistence that the Clynes Estate was at fault at the time of the impact, and that the additional charge of the court was erroneous and damaging to the defendants, Mondays, as accenting fault of the Mondays at the time of the impact, * * *"

Thereupon the court recalled the jury and gave the following additional instructions:

"The Court possibly should have explained a little more fully at the other time.

" 'Did you charge us that we were only to consider who was at fault only at the point of the impact?'

"No. The answer to that question would be, no, I didn't charge that.

"Of course you consider who was at fault at that time. That was the only time it is insisted that the Mondays were at fault. But it is insisted by the plaintiffs that the other people were at fault, the Clynes Estate at fault, as I said before, in failing to have the car under proper control and in permitting the car to get in the condition that it was in, and

that that was a continuing fault, that they were negligent or at fault. And that then after the car did come and strike the other, that the Monday people were at fault, and they both being at fault they are both what you call joint tort feasors, or violators under the law and at fault.

"Of course, you are to determine whether there was one or more, but the Court does not charge you there was only one at fault at the time, but does charge you it is the insistence of the plaintiffs that they were both at fault: one in what occurred as coming around the curve, the Clynes Estate in what occurred coming around the curve, lost control of the car, and that negligence or fault continued; and that the other truck run into them and they were at fault.

"In other words, it was a concurring and concurrent thing of the two that brought about the accident. That is the plaintiffs' insistence. You are to determine how the matters were.

"I sent for you to explain a little more fully."

The jury's second request was, "Is this jury to determine the degree of guilt, if any, of the defendants? If so, please define again the various phases of negligence or fault." In response to this question the court gave additional instructions, portions of which are, as follows:

"The answer to your first question is, no, it is not to determine the degree of guilt if any of the defendants.

"Our courts have repeatedly said, in cases like this of alleged joint liability, the rule established by an unbroken line of authorities, that when a plaintiff sues the joint wrongdoers, or any number, for an injury he is entitled to a verdict for full compensation

against all the defendants when he succeeds in convicting them of the wrong, without regard to the degree of guilt of each defendant. In so far as he is concerned each joint wrongdoer is bound to answer him for the full injury sustained whatever may be the grade of the offense as between themselves.

"Now, as I said, the test is fault or negligence. As I said to you there can be no recovery against either one of the defendants unless you first find by the preponderance or weight of the proof that such defendant, or defendants, is guilty of negligence or is at fault.

"If you find that they both are guilty of negligence or at fault, which was the direct and proximate cause of the injury, then both defendants would be liable, and it would be a matter of indifference to you which one you felt was more liable than the other because you have to assess one recovery in this case.

\* \* \* \* \* \*

"You can find against one defendant who is guilty of negligence or at fault and whose guilt of negligence or fault was the proximate cause of the injury, but if you find that as to both defendants then your verdict should be as to both defendants, taking into consideration what I have heretofore charged you.

\* \* \* \* \* \*

"The question laid down is, is the defendant guilty of negligence, and does it proximately contribute to the injury or proximately cause the injury; then, if so, such defendant is liable and the verdict should be rendered against him. On the other hand, when you look at it, if you do not find a defendant guilty of negligence and that was not the proximate cause of the injury, if you do not find those things to prove

it as to such defendant, or defendants, your verdict should be in his or their favor.''

With reference to the jury's first question, it is argued on behalf of the Trucking Company that ''Not only did the Court commit error in first answering the juror's question, but did not correct the error when the jury returned, and the additional charge was unnecessary and erroneous,'' and regarding the jury's second question, it is further argued that ''The jury having asked the question about the degree of guilt, and being given a negative answer, it was confusing and contradictory for the court to further charge the jury, * * *unless the question was answered in the affirmative.'' On behalf of the Clynes Estate, it is urged that the additional instructions ''unduly emphasized the plaintiffs' theory that both were at fault.''

 It is not error for a court to repeat certain instructions in response to a request by a jury after it has retired. Tallent v. Fox, 24 Tenn. App. 96, 141 S. W. (2d) 485; Duane & Co., v. Garretson, 106 Tenn. 38, 58 S. W. 1063; 53 Am. Jur. 942, p. 667. Nor is it error for a court, on its own motion, to recall the jury for the purpose of correcting previous instructions. Memphis St. Railway Co. v. Bailey, 6 Tenn. Civ. App. 105; 53 Am. Jur. 941, p. 677; 64 C. J. 644, p. 734. Nor do we find any merit in the insistence made on behalf of the Clynes Estate that the court unduly emphasized the plaintiffs' side of the case. The court's charge consisted of approximately 75 pages of the record, in which was fairly stated the theory of all the parties, and in the absence of an affirmative showing we think that it may be assumed that the jury properly considered the charge as a whole rather than disjointed parts of it. Under Code Section 10654, this court will not reverse or set aside a judgment for an alleged error in the

charge unless it shall affirmatively appear that the error complained of affected the results of the trial.

By assignment 32 the Trucking Company complains of alleged improper references to liability insurance made by a third party in the presence of three of the jurors, and by assignment 8 the Clynes Estate complains that the jury considered liability insurance in reaching its verdict. Under our established procedure we are unable to consider assignment 8 because the matters relied upon therein were not presented to the trial court in the defendant's motion for a new trial. Rule 11, Subsec. (5), Rules of Court of Appeals; Tenn. Procedure in Law Cases, Section 1592; Curtis v. Kyte, 21 Tenn. App. 115, 106 S. W. (2d) 234; Southern Ry. Co. v. Hooper, 16 Tenn. App. 112, 65 S. W. (2d) 847; Hargraves v. Hamilton Nat. Bank, 27 Tenn. App. 655, 184 S. W. (2d) 397.

The alleged misconduct which the Trucking Company complains of occurred on the second day of the trial during one of the recesses when Mr. Sidney Davis, a member of the Clinton Bar, while standing near the water fountain in the hall of the Court House, unintentionally asked Calvin Walker, an Insurance Investigator associated with the Trucking Company's attorneys, "Do you still represent The Great American Indemnity Company?"; "Do you still represent the Insurance Company that Mr. Arnett represents in these cases?" and "Will you want me to help you get a mistrial?" Also present when the remarks were made were Mr. Paul Stewart and Mr. Arnett, two of the attorneys for the Trucking Company, and at the time three jurors, Roy McAfee, George Sloan and Thomas Hutton, were standing nearby. It is argued that these remarks were heard by the three jurors and that they influenced the jury's verdict.

Juror McAfee admitted that he heard one of the parties make a casual reference to insurance, but he specifically denied that he told any of the other jurors about it or that the remark in any way influenced his verdict. Regarding the remark this juror testified in part as follows:

"Q. Mr. McAfee, in your direct examination you made some reference to some statement down in the hall, something down there. Do you recall who else, what other jurors may have been present at that time? I believe it was me and two men on the jury.

"Q. You and two men? A. Yes, sir.

"Q. Did you talk with them about it? A. No, sir.

"Q. Didn't talk to them about it at all? A. No, sir.

"By the Court:

"Q. Did you tell them in the jury room about this conversation heard in the hall? A. No, sir.

"Q. Did it have any effect on you whatever in any shape, form or fashion? A. No, sir.

"Q. Did you consider it for one moment? A. I never give it one thought.

"Q. What was the conversation you heard down there in the hall? A. All I heard down there was Mr. Arnett and some guy said something to him about something about insurance representing insurance or something.

* * * * * *

Q. The other man asked Arnett something about if he was representing insurance? A. Yes, sir.

"Q What did he say? A. I don't remember.

"Q. You don't remember whether he said he did or did not? A. I don't remember.

"Q. Did Sidney Davis say anything about getting a new trial? A. He never said—I didn't hear anything like that.

"Q. You did not hear Sidney say a word? A. No, sir.

\* \* \* \* \* \*

"Q. Did you hear any of them say anything about a new trial? A. No, sir.

"Q. You just didn't hear that at all? A. No, sir.

"Q. Did you decide that case on what you only thought about it or did you take into account what somebody told you about an insurance company? A. Well, I just took it according to what I knew about what the proof said of the witnesses.

"Q. Did you figure at all that the insurance company, that they would have to pay, or anything of that kind, or did you take in consideration at all in reaching your verdict here? A. Of course, it was talked through some of the other jurors—I would say maybe several of them, all of them, in there that insurance might have to take care of it.

"Q. You did not tell them though about the conversation you had down with this man, about what Arnett told the man down there? A. No, sir, I never mentioned it to anybody, except Mr. Arnett asked me about it that day up at the house after the trial was over."

Juror Sloan denied that he heard any part of the conversation in question, and regarding the discussion of insurance in the jury room, this juror said:

"In the jury room, I do recall someone mentioning how the judgments would be paid, but it was immediately agreed by all of us that our job was to determine who, if anyone, was at fault and how much damage had been done, and this was to be determined solely from the testimony in the case and the instructions of the Court. Whether or not there was any

insurance, or who would pay any judgment had nothing to do with my decision as to who was at fault or with the amount of the damages I thought either of the fellows was entitled to. I don't think that any of the other jurors let the matter of insurance or who would pay the judgments affect their verdict. I decided the case, and I believe all the other jurors decided it, solely upon what the witnesses said in the Court and what the Court instructed.''

Juror Hutton, who was not asked if he heard the conversation, made the following statement:

''I was one of the members of the jury in the above-styled cases, and that while in the deliberation of the jury no mention, so far as I know, was made of any fact bearing upon the question as to whether or not either the automobile or the truck involved in the accident had any insurance, * * *''

Thus it appears from the testimony of the three jurors that only Juror MCAfee heard a part of the conversation, a slight reference to insurance, which he said had no bearing upon his decision in the cases.

The burden was upon the defendant to show that the jurors not only heard the conversation but also that the conversation influenced their verdict. In this the defendant has failed. Probabilities and tendencies of errors in trial are not grounds for reversal, but there must be affirmative showing that error affected the results of the trial. Code Section 10654. Johnson v. McCord, Tenn. App., 251 S. W. (2d) 144.

Assignment 34 of the Trucking Company complains because the trial court refused to grant the defendant a new trial on grounds of newly discovered evidence, which consisted of 118 pages of testimony by Mr. James Stannard Baker, Director of Research and Development

of the Traffic Institute at Northwestern University, an expert on skidmarks, traffic accidents, etc. This testimony was given for the Trucking Company at another trial growing out of the same accident. According to the testimony of this witness, who studied the photographs of the accident in question, the truck skidded approximately 78 feet. This testimony would have been cumulative inasmuch as three of the defendant's witnesses estimated the length of the skidmarks at ''60 to 65 feet,'' ''75 feet,'' and ''30 steps.'' Newly discovered evidence which is merely cumulative is insufficient to require a new trial. Vest v. Bitner, 34 Tenn. App. 575, 241 S. W. (2d) 438; 66 C. J. S., New Trial, Sec. 113, p. 318. Other testimony by this witness related to minimum speeds from skidmarks, which would have contradicted the testimony of plaintiffs' expert witness, William J. Cree. The law appears to be settled, without exception, that newly discovered opinion or expert testimony cannot be the basis for the granting of a new trial. Kannon v. Galloway, 61 Tenn. 230; 66 C. J. S., New Trial, Section 102, p. 294. Nor, generally, will a new trial be granted for the purpose of letting in newly discovered evidence for contradictory or impeaching purposes alone. Vest v. Bitner, supra; Tenn. Procedure in Law Cases, 1572, p. 617; 66 C. J. S., New Trial, Section 114, p. 324; 39 Am. Jur. 167, p. 173. Furthermore, no affidavit showing diligence was filed in support of the motion, nor was there any showing that the evidence was not available prior to or during the trial. Before a new trial will be granted on the ground of newly discovered evidence, it must appear not only that the evidence has been discovered since the former trial, but also that it is such that, by the exercise of reasonable diligence, could not have been procured for the trial. Tennessee Eastern

Electric Co. v. Link, 6 Tenn. App. 617; Rosenbaum v. Herron, 5 Tenn. Civ. App. 630.

Finally, by assignments 35 and 36 of the Trucking Company and 4 and 5 of the Clynes Estate, the defendants complain that the verdict of the jury for Millsaps was excessive; that it was so excessive as to evince passion, prejudice and caprice on the part of the jury.

At the time of the trial Millsaps was 32 years of age, was married and had a wife and four children dependent on him for support. Previous to the accident he had enjoyed good health, weighed 175 pounds, played softball, fished and went camping with his sons. As Manager of the Branch Office of the Home Beneficial Insurance Company at Oak Ridge, he had an income of between $450 and $500 per month. On the date of the accident he said that he went to sleep after leaving Crossville, and that he did not know anything until three weeks later when he woke up in the Oak Ridge Hospital. He remained in the hospital for more than five months, when he was transferred to his home where a hospital bed had been equipped for his needs. During the first three months in the hospital he was in traction with 30 pounds on his left leg and a plaster cast on his body extending from his ribs to his toes on the left foot, because of a severe pelvic injury. Since the cast was removed he has been unable to turn himself in bed and can only do so by the use of a swing. At the time of the trial he had no use of his left leg, had only partial control oi his right, and was able to stand for only short intervals. Because of a crushed pelvis, which did not properly unite, a part of the bone projects outward, making it impossible for him to sit without having severe pains in his pelvic region. His medical expenses on the date of the trial totaled $5,633.09, and his loss in

earnings amounted to $4,160, or a total of $9,793.09. His weight at the trial was 133 pounds.

The medical testimony showed that Millsaps arrived at the hospital in Oak Ridge about an hour and a half after the accident; that he was semi-conscious and in severe shock, and to combat the shock he was immediately given plasma, glucose and saline, and later transfusions. Later, when able, he was x-rayed, which revealed a severe crushed pelvis detached from the spine with parts on the left side dislocated upward about an inch. Dr. Dana Nance described the condition of his pelvis as "the worst one that it has been my experience to see, and I have seen many."

On arrival at the hospital Millsaps was not only unable to urinate but he was bleeding from the bladder, and attempts to catheterize him were unsuccessful. On the following day it was discovered that he had a severe urethra, and to relieve the situation an artificial opening was made through the abdomen, in which a tube to the bladder was inserted. This method of drainage proved satisfactory and its use was necessary for a period of four and one-half months. Later, when the urethra was in the process of healing, abscesses developed in the perineum above the rectum which also had to be drained.

To reset the pelvis, Millsaps was placed on a fracture table where his pelvis was vigorously manipulated. Following this he was placed in a double plaster cast, and to pull down the left side of his pelvis his left leg was put in 30 pounds of traction. Two months later the first cast had to be replaced because of the constant drainage from the abdominal tube and bed sores which had developed and were slow in healing.

Millsaps now has a marked deformity by reason of his pelvis being much narrower than normally, and his legs are also closer together, and "this deformity will be permanent." This condition according to Dr. Nance prevents Millsaps from being completely comfortable in any position.

Dr. Nance also stated that Millsaps still passed pus in his urine, and that this would continue to require close observation to prevent infection; that dilations have been required every two weeks so that the bladder will function, and that these dilations might later be reduced to one a month. The doctor also stated that the urethra at the neck of the bladder would require periodic scrapings for the remainder of Millsaps' life. On being asked if the reproductive organs had been impaired, the doctor replied that Millsaps had "shown none of the ordinary evidences of sexual excitement"; that because of the injury to the sacrum and the ejaculatory duct, together with complete severance of the urethra, the sexual organs had probably been impaired. Regarding Millsaps' disability, Dr. Nance stated that in his opinion "he is 100% disabled for his usual occupation." There was no evidence to the contrary.

In the recent case of Olson v. Sharpe, Tenn. App., 259 S. W. (2d) 867, certiorari denied June 5, 1953, this Court approved a verdict for $80,000 for the plaintiff who had sustained similar injuries to those involved herein. In that case Olson, an engineer, was totally disabled physically from following his profession, but he was given a desk job at an increased salary. In the instant case it appears that Millsaps is not only totally disabled from conducting his insurance business, but that he has no other occupation, and for this reason we do not think the

present verdict excessive, when compared with that in the Olson case.

 While no mathematical rules of computation have ever been formulated making verdicts and judgments uniform in negligence cases, it is the duty of the courts to take into consideration the nature and extent of the injuries, the suffering, expenses, diminution of earning capacity, inflation and high cost of living, age, expectancy of life and amount awarded in other similar cases. Town of Clinton v. Davis, 27 Tenn. App. 29, 177 S. W. (2d) 848; Foster & Creighton Co. v. Hale, 32 Tenn. App. 208, 222 S. W. (2d) 222.

In Reeves v. Catignani, 157 Tenn. 173, 7 S. W. (2d) 38, 39, the Court said:

"The amount of the verdict is primarily for the jury to determine, and next to the jury the most competent person to pass upon the matter is the judge who presided at the trial and heard the evidence."

And, in American Jurisprudence, it says:

"Moreover, the question of the excessiveness of a verdict is generally one for the determination of the trial court in the first instance, and its action in granting or refusing to grant a new trial on that ground will not be a disturbed on appeal unless an abuse of discretion is shown." Vol. 15, Sec. 205, p. 622.

The trial judge having heretofore ordered a remittitur of $19,000, which we approve, we have found no additional reason to justify a further reduction in the judgment. Accordingly, all assignments of error will be overruled and the judgments will be affirmed at defendants' costs.

McAmis and Hale, JJ., concur.