WEBSTER v. TRICE.—133 S. W. (2d) 621.

Middle Section. July 22, 1939.

Petition for Certiorari denied by Supreme Court, December 8, 1939.

O. B. Starnes, H. T. Wright, and T. B. Finley, all of Lebanon, for plaintiff in error Webster.

L. H. Walker, of Lebanon, for defendant in error Trice.

FAW, P. J. This case was tried in the Circuit Court of Wilson County before Judge Holladay, without a jury, and, upon the evidence, the Court found the issues (made by defendant's plea of not guilty to plaintiff's declaration) in favor of the defendant, Roy Trice, and rendered judgment dismissing the suit of plaintiff, Harve Webster, at his cost.

Plaintiff's motion for a new trial was overruled, and he thereupon reserved exceptions to the rulings of the Court, and prayed, obtained and perfected an "appeal" to this Court.

The "appeal" in this case will be treated as an appeal in the nature of a writ of error, as a simple appeal does not lie from a judgment in an action at law. Spalding v. Kincaid, 1 Shan. Cas., 31; Manley v. Chattanooga, 1 Tenn. App., 65; Merriman v. Coca Cola Bottling Company, 17 Tenn. App., 433, 435, 68 S. W. (2d), 149.

This suit grew out of collision between two automobiles on December 9, 1937. One of the cars was owned and driven at the time of the collision by George Fish, and will be designated herein as the Fish car.

The other of the two cars was owned by defendant Roy Trice, and will be designated herein as the Trice car. Katherine Trice, a daughter of defendant Roy Trice, was driving the Trice car at the time of the collision.

The collision occurred about three miles south of the town of Lebanon, and on the highway connecting the towns of Lebanon and Murfreesboro. There were six men in the Fish car (a 1929 Model Chevrolet). The driver, George Fish, had hired the five men who were riding with him in his car, including plaintiff Webster, to "cut timber" for him, and he was conveying them to Walter Hill, in Rutherford County, for that purpose. There were three men

on the front seat of the Fish car and three men on the rear seat. Plaintiff Webster (forty years of age) was "in the middle," on the rear seat.

Claude Fish, an occupant of the Fish car, also sued Roy Trice for damages on account of personal injuries suffered in the same collision, and his suit was, by consent, tried together with the suit of plaintiff Harve Webster, and was also dismissed by the Trial Judge, but he (Claude Fish) did not appeal, and his case is not before us for review.

According to the testimony of defendant Roy Trice, the Trice car ("a Terraplane") was bought by him for the use of his family, and his daughter Katherine (a member of his family) was taking his "younger daughter" to Flat Rock School when the collision occurred on the highway in front of the entrance to said school grounds. Defendant Trice admits the right of his daughter to drive his car on the occasion in question, as a "family purpose" car.

So far as appears, it seems to have been tacitly conceded in the Court below, and likewise in this Court, that plaintiff Webster was a "guest" in the Fish car; and we will treat the case on that theory.

As the case was tried below without a jury, the hearing in this Court will be de novo, on the record, but with a presumption that the judgment of the Trial Court was correct, unless the evidence preponderates against the judgment. Code, section 10622.

Plaintiff's assignments of error are that (1) "There is no evidence to sustain the finding and judgment of the Court," and (2) "The evidence all preponderates against the defendant and in favor of the plaintiff."

There are, in form, two additional assignments, but they are merely specifications of plaintiff's contentions with respect to the evidence in the case which, he insists, supports his first and second assignments of error.

The third assignment is that, "The evidence all shows that this plaintiff was not guilty of any negligence whatever; that the evidence fails to show that he neglected to do anything which he was required to do for his own safety at the time of the accident and injury."

And the fourth assignment is that: "All the evidence undisputed is that, this plaintiff was riding in the car being driven at the time by one George Fish, as a guest in the said Fish car at the time of the collision with the Trice car owned by the defendant which resulted in the injury sued for in this cause, and that, if the driver of the Fish car was negligent, his negligence was not imputable to this plaintiff, and further because all the evidence shows that the defendant's daughter, who was driving his car at the time of the accident and injury, was herself negligent, and her negligence proximately contributed to produce the injury sued for, and that at the time she was driving the defendant's car by his permission, and with his knowledge and on his business."

It is seen that the plaintiff is contending that negligence of Katherine Trice, the driver of the Trice car, was the proximate cause of the collision and of plaintiff's injuries, and that plaintiff was not guilty of any negligence which contributed, as a proximate cause of his injuries.

It is insisted for defendant that neither of the plaintiff's contentions above stated is supported by the preponderance of the evidence.

The first question to be considered is, whether it is shown by the greater weight of the evidence that the driver of the Trice car was guilty of actionable negligence which was the proximate cause of plaintiff's injuries; for the question as to whether the plaintiff, as a "guest" in the Fish car, was guilty of contributory negligence is unimportant, unless the evidence preponderates in favor of the conclusion that the proximate cause of the collision and the plaintiff's injuries was negligence of the driver of the Trice car. Tennessee Central Railway Co. v. Schutt, 2 Tenn. App., 514, 519, 520.

The collision in question occurred between seven and eight o'clock A. M. on the aforesaid highway, and opposite, in front of, the entrance to the grounds of the Flat Rock School. The Fish car was going southward and the Trice car had come from the south and had reached the point on the highway where the driver intended to turn across from the east side of the highway into the school grounds west of the highway. The theory of the plaintiff is that the Trice car was driven across the west half of the highway and there collided with the Fish car. The theory of the defendant is that the Trice car had stopped, and was standing on the east half (its proper side) of the highway when it was struck by the Fish car.

The testimony of twenty-two witnesses was heard at the trial below. All of this testimony has been carefully examined and considered, but we will state herein merely enough of same to illustrate the material conflicts in the evidence for the respective parties, and point out certain admitted facts.

 We will first direct our attention to the evidence relating to the matter of alleged negligence of the driver of the Trice car.

George Fish, the owner and driver of the Fish car, testified as follows:

"I was driving my car and had five men with me. The accident occurred about seven A. M. in front, or nearly so, of the Flat Rock School house. I knew there was a school house there and I knew that school was in session, but I did not see any children on the grounds or road near the school at the time of the accident, or just before it. It was a very cold morning, in fact about the coldest morning we had during that winter. I was driving about 35 mi. per hour. My car was a 1929 model Chevrolet. My brakes were not the best but adequate I thought. I saw the Trice car coming around a curve at least 150 yards in front of us, it was on its right side of

the road, and I was on my right side of the road; I thought we were going to meet and pass, until the driver of the Trice car, Miss. Katherine Trice, got to about 10 or 15 feet of us and without any warning signal of any kind, turned directly in front of and into the left side of my car. As she began her turn, I suddenly swerved my car to the right on the shoulder of the road in an effort to avoid the collision, but it was impossible to do so; and she pulled her car into the left side of my car. Her left front wheel and left fender hit my car in the left side just about or a little to the front of where the fender and running board join. This caused me to leave the road still further and into the road ditch (and onto the School grounds) turning over and stopping about 40 or 50 feet from the place of actual contact between the two cars. My car was completely demolished. I was unhurt. I stated to Miss Trice the driver of the other car, which was a new Terraplane, that I did everything I could to keep from hitting her. I had never figured in an accident before this one. I have no recollection of telling any one that the accident was my fault and that my brakes were bad, and that I did not blame the driver of the Trice Car. I had no intention of saying such a thing and do not now have any intention of saying such a thing.

"We were going toward Murfreesboro and Miss Trice was coming toward Lebanon, or north. Miss Trice's car was injured on its front left, left front wheel and fender and left running board. My car stopped against a light pole and made a scar on the pole where it stopped."

The plaintiff, Harve Webster, did not see the Trice car, either before or after the collision. He said: "Just before the collision, I felt the car I was in swerve, or lean to the right, and then in a second following that swerve, or leaning motion, the crash occurred, and I was knocked unconscious and remained so for several hours."

Claude Fish was on the front seat of the Fish car, but, "was not watching the road at the time of the collision," and was "knocked unconscious." He said: "The car we were in was struck on the left side, just back of the front wheel; about where the front fender and running board join. The car we were in was brought to my father's house in the afternoon following the accident, and that is where I first saw it after the wreck. I cannot say which side of the road we were on at the time of the collision. We were going south, toward Murfreesboro and Miss Trice was driving north toward Lebanon."

Willie Webster (plaintiff's son) said: "I was sitting on the front seat beside the driver of the Fish car, as we were going south on the Murfreesboro highway, near the Flat Rock school house, which is on the west side of the road. As we approached the school house grounds, I saw the Trice car coming down the road some 150 yards in front of us, it was on its right side of the highway, and we were

on our right side of the road. I saw nothing out of the ordinary, and thought that we were going to meet and pass each other. Just before reaching us, some 10 or 12 feet from us, Miss Trice, suddenly and without warning of any kind, turned her car across the road, toward the school driveway entrance. George Fish, the driver of our car, instantly cut his car to the right off the paved surface of the highway in an effort to get by without being struck; however the Trice car struck the Fish car on back part of the left fender about where the fender and running board unite. George Fish was driving about 30 or 35 miles per hour. Miss Trice did not blow her horn, or give any signal at all. I was unhurt. The Fish car stopped about 40 or 50 feet from the point of actual contact with the Trice car, against a light pole on the right side of the road going south.''

Thomas Fitts was on the rear seat of the Fish car just behind the driver. He states that he had his elbows on the back of the front seat and was looking out of the windshield over the driver's shoulders. His testimony as to the manner in which the collision occurred substantially accords with that of George Fish (copied supra). He also stated that ''the Trice car was left on the road, with its front wheels a little west of the center of highway and the rear wheels to the east of center of road; it was setting crossways of highway.''

W. Jergin and Elvis Helmentoler did not see the collision. They were going south on the highway in a truck after the collision. They stated that they found the Trice car across the road with its rear wheels near the center of the highway and its front wheels on or near the shoulder of the road on the west side of the road, and the Fish car forty or fifty feet away from (and south and west of) the Trice car, against a light pole and fence.

Both Jergin and Helmentoler stated that they did not know whether or not the cars had been moved before their arrival.

It may be observed, in this connection, that the testimony of Jergin and Helmentoler relating to the location of the Trice car on the highway cannot be reconciled with the above stated testimony of Thomas Fitts, or the testimony hereinafter stated of the two school teachers, Miss Pearl Cluck and Miss Portia Bently, on that subject, except upon the assumption that the Trice car had been moved (possibly in an effort to get it off the highway) before the arrival of Jergin and Helmentoler.

Fletcher Tomlinson said: ''I went out to the scene of the accident in the afternoon of the day it occurred. I went to get the Fish car. It was brought to the home of George Fish's father. The Fish car was struck on the left side, near where the door on the left side is hinged or to be more exact about where the left fender and running board joins. It also showed signed of a lick on the right side where it had stopped against the light pole.''

There was testimony by plaintiff and his physician relative to his

injuries, but in the view we take of the case, it is unnecessary to state this testimony herein.

All of the witnesses whose testimony is hereinbefore stated were examined on behalf of the plaintiff.

Witnesses testified on behalf of defendant Trice as follows:

Katherine Trice said: "I was taking my sister to school on the morning in question, the 9th of December, 1937. As I approached the point on the highway where I was to turn in toward the school house I stopped my car and was looking back toward Murfreesboro, or south. The windshield on my car was clouded, and I could not see good toward the front. I never saw the car that struck me. I was on my right-hand side of the road, and was stopped still when struck. I think the Fish car was going, or traveling 50 miles per hour. It ran 40 or 50 feet after striking my car and was torn up. The Fish car struck a light pole. It was completely torn up. The Fish car pulled my car around and across the road. . . . George Fish said to me that he did not know how it happened. I did not give any signal of my approaching turn because I was not turning. I had stopped and I did not see the Fish car before it struck me."

Defendant Roy Trice testified as follows:

"Katherine Trice, my daughter, was the driver of my car, she was taking my younger daughter to school at Flat Rock School, I did not see the accident and it was two or three hours before I got to the place of the accident. My car was a Terraplane, it was damaged to the extent of ninety odd dollars. The damage was to the front wheel, left front fender, and left running board, the right side of my car was not damaged. The Fish car was 40 or 50 feet to the right and south of the entrance to the school grounds, where I was informed the collision occurred. The Fish car had struck a light pole, making a dent on the pole where it had hit, showing it had struck with much force. I bought this car for the use of my family and my daughter had the right to so use on this occasion. . . .

"The skid marks on the highway showed that the Trice car had been dragged from the east side of the highway to about the center of the highway. George Fish the driver of the car told me that he was mighty sorry but his brakes were bad and it was his fault and he did not blame Miss Trice. He had been to the hospital and returned when I got there."

Donald Ricketts said: "I am a mechanic and working at the Prichard Motor Co. and I repaired the Trice car. The left front wheel was torn down, the left fender torn off to left light, left running board turned up and bent the bumper to the right. Repairs cost $90.00. The right side of the Trice car was not damaged, did not have a scratch on it. The Trice car was hit in front about half way between the center of the car and left light."

Miss Pearl Cluck said: "I am a teacher at Flat Rock School. I

went out immediately after the collision. I took those injured to the hospital in my car. I saw the Trice car on the east side of the highway, all of it on the east side of the center line in the road had there been a center line in the road. I drove my car out of the school driveway by the Trice car as it remained in the highway. As we were coming to the hospital with the injured, George Fish said that he did not blame Miss Katherine, that he saw the other car, but that his car was old and he could not stop."

Miss Portia Bentley said: "I, too am a teacher in the school near where the accident occurred. I came out of the house to the highway, and the Trice car was on the east side of the highway with the front of it facing the school ground. I asked some man in the truck to move the Trice car off of the road and into the school grounds."

Herman Comer said: "I saw the cars as they were after the accident. The Trice car was on the east side of the highway except the left front wheel, it was on the west side of the highway. The Fish car was 40 feet away from the Trice car, over against the fence and light pole. It was to the south and west of the Trice car. All of the parties in the wreck had gone when I arrived. I know nothing about the accident as to how it happened."

Phanton Rodgers said: "I live near the school house, where the accident occurred. When I came to the scene of the collision the Trice car was on the school grounds and the Fish car was near a light pole 50 feet away. There was a bruised place on the pole where the car had hit. The right rear brake shoe was off or half of it was off and from the way it was rusted, I think it had been off some time."

Mrs. Oscar Ford, without objection, testified as follows: "George Fish lived near me for 18 months. He drove as hard as he could right down the center of the road. I never heard of him having an accident before this time."

J. T. Grindstaff testified (also without objection) as follows: "I had been riding in the car with Fish, but on account of the condition of the car and the way it was crowded, and the reckless driving, I decided not to go when George Fish came by after me on the morning of the accident. I went the day before and they had nine crowded in the car on that day."

Upon the evidence in the record, we think the Trial Court might well have found that the Trice car was not driven onto the west half of the highway and against the Fish car, and that the driver of the Trice car was not negligent as averred in plaintiff's declaration.

The testimony of Katherine Trice that the Trice car was on the east half of the highway when the collision occurred, and that the Fish car was driven against the Trice car, is supported (1) by the testimony of the two school teachers, Miss Cluck and Miss Bentley, and plaintiff's witness Thomas Fitts, that the Trice car was on the east half of the highway immediately after the collision, (2) by the

"skid marks" on the highway showing the position from which the Trice car was "dragged" by the impact, (3) by the undisputed proof with respect to the location of the injuries inflicted on the Trice car, and (4) by the proof that the brakes of the Fish car were defective, and it was admittedly moving at a speed of thirty-five miles an hour.

We are of the opinion that the evidence does not preponderate against a finding that negligence of the driver of the Trice car was not a proximate cause of the collision and the plaintiff's injuries.

 It is further insisted for defendant that, even though the driver of the Trice car had been guilty of actionable negligence, the plaintiff was guilty of contributory negligence which would bar his action, in that, the Fish car was being driven at an unlawful rate of speed within a "school zone," with the knowledge of the plaintiff and without protest from him.

It is provided by the Act of 1937, chapter 245, section 2, subsection (b), that: "Any person who shall drive at a speed exceeding the speeds set forth in this subsection shall be prima facie guilty of reckless driving: First: Fifteen miles an hour when passing a school during recess, or while children are going to or leaving school during its opening and closing hours; provided, that markers be placed on the highway so as to plainly show the location of such schools."

George Fish, the driver of the Fish car, admitted that "the accident occurred about seven A. M. in front, or nearly so, of the Flat Rock School house" and that he "knew there was a school house there" and "knew that school was in session;" and the plaintiff, Webster, admitted that, "the accident occurred in front of, or nearly so, of the Flat Rock School house," and that he "knew there was a school house at the place, as we had passed by it for some two or three days before the time of the accident."

The collision in question occurred while children were going to the Flat Rock School during its opening hours.

It appears, without dispute, that markers had been placed on the highway so as to plainly show the location of the Flat Rock School, and that such markers were standing at the time of the collision in question; but the preponderance of the evidence shows that shortly after the collision, and on the same day, it was discovered that the marker at the northern end of the school zone, from which direction the Fish car approached the scene of the collision, was turned around so that the "lettering" thereon was on the south side of the marker.

It is evident from the testimony of the plaintiff himself that, if the "lettering" had been in its proper place—on the north side of the marker—it would have conveyed no information to him, or to the driver of the Fish car, which they did not already possess.

It is obvious that the "speed limit" of "fifteen miles an hour" etc. was enacted for the protection of school children, and it is equally

obvious that the proviso that "markers be placed on the highway so as to show the location of such schools" was simply a method provided, in furtherance of the aforesaid primary purpose of the statute, to afford notice to those who did not know of the "location of such schools." The provision for "markers" was not intended for the benefit of one (such as the plaintiff) who well knew the location of the Flat Rock School, and that he was passing same at an hour when children were going to school. "One not a beneficiary of a statute may neither base an action nor a defense on a violation thereof. Unless an individual be within the province of a statute, its violation is no breach of duty to him." Chattanooga Railway & Light Co. v. Bettis, 139 Tenn., 332, 338, 202 S. W., 70, 71; Carter v. Redmond, 142 Tenn., 258, 263, 218 S. W., 217; Stricklin v. Louisville & Nashville Railroad Co., 2 Tenn. App., 141, 153.

■■ The negligence of Fish, the driver, may not be imputed to the plaintiff; but plaintiff could not rely upon the care and vigilance of the driver to the extent of relieving himself from the exercise of reasonable precautions for his own safety; and when he knew that the car in which he was riding was passing the Flat Rock School at a speed of thirty or thirty-five miles an hour, it was his duty to remonstrate with the driver and admonish him to reduce his speed to lawful limits; and his failure to protest against the driver's violation of the law was personal negligence of the plaintiff, which constituted a proximate cause of his injury. Louisville & N. R. R. Co. v. Anderson, 159 Tenn., 55, 15 S. W. (2d), 753, and other cases therein reviewed.

For the reasons herein stated, the plaintiff's assignments of error are overruled, and the judgment of the Circuit Court dismissing plaintiff's suit at his cost, is affirmed.

The costs of the appeal will be adjudged against the plaintiff Harve Webster.

Crownover and Felts, JJ., concur.