**L. Carl FERRILL and Doris J. Ferrill**

v.

**SOUTHERN RAILWAY COMPANY.**

Court of Appeals of Tennessee,
Eastern Section.

Nov. 15, 1972.

Certiorari Denied by Supreme Court
Feb. 20, 1973.

Wilson S. Ritchie and Robert W. Ritchie, Knoxville, for L. Carl Ferrill and Doris J. Ferrill.

Clyde W. Key and Earl R. Layman, Knoxville, for Southern Railway Co.

## OPINION

PARROTT, Judge.

In this suit plaintiff, Doris J. Ferrill, sues for personal injuries and her husband seeks to recover for loss of services and property damages as an alleged result of the Southern Railway's failure to properly exercise its common law duty in constructing and maintaining its tracks where they cross Ailor Avenue in Knoxville.

Originally there were other defendants but in this appeal we are only concerned with the action between the plaintiffs and the Southern Railway because the other defendants have either been nonsuited or dismissed.

In the trial below the jury returned a verdict in favor of plaintiff, Doris J. Ferrill, in the amount of $91,250.00 which was remitted by the trial judge to $50,000.00 and accepted under protest. The verdict for her husband, L. Carl Ferrill, for loss of services and property damage was $7600.00 which was remitted to $5,000.00 and likewise accepted under protest.

Both parties have appealed with the plaintiffs insisting the trial judge erred in granting the remittitur. Defendant's appeal asserts there is no evidence to sustain the verdicts; the court erred in its charge to the jury; the verdicts, even after being remitted, are excessive; and alleged misconduct on the part of the jury.

The proof shows that on July 16, 1968, about 3:00 p. m., Thomas L. Ferrill, 16 year old son of plaintiffs, with his mother as a passenger in the car, was traveling in a westerly direction on Ailor Avenue. The car approached the defendant's tracks at approximately 15 to 20 miles per hour. As it proceeded across the tracks the car suddenly developed a "rocking motion" with the front end dipping forward to the point it struck a rail or some object causing it to stop suddenly. Mrs. Ferrill was thrown forward with her face striking and shattering the windshield inflicting severe lacerations to her nose and cheek.

The Ailor Street crossing consists of three tracks including a main track belt line with spur tracks. As for the condition of the crossing, we think it suffices to say there is an abundance of evidence from which the jury could reasonably conclude the crossing was being maintained in an unsafe and dangerous condition. There is testimony in the record of holes in the pavement as deep as three inches. Further, the numerous photographs show the pavement to be broken and the rails protruding above the pavement.

Defendant, in this appeal, does not insist the crossing was being properly maintained but denies any and all obligations to maintain the crossing. The insistence is predicated on the fact that the railroad's tracks were constructed and in operation a long time prior to the time Ailor Avenue was extended across the tracks.

The railroad strenuously argues the trial judge errred when he refused to charge the jury the special request offered by the defendant saying: "I further instruct you that if you find from the evidence that the Southern Railway Company tracks were constructed and placed in operation prior to the time Ailor Avenue was extended across the right-of-way of the defendant, then the obligation rested upon the City of Knoxville to construct and maintain said crossing in a reasonably safe condition."

■ We believe the trial judge acted correctly in refusing to charge this request because it is an incorrect statement of the law. It is our opinion the common law imposes a duty on a railroad to keep in a reasonably safe condition its tracks and roadbed where they are crossed by public streets and roads. This duty is in no way diminished or abrogated by the fact that the street intersected the railroad at a later date.

Our Supreme Court, in Southern Railway Company v. Maples, 201 Tenn. 85, 296 S.W.2d 870, had the following to say:

"While a municipality, such as the City of Newport, is under a duty to the public to maintain its streets in a reasonably safe repair, nevertheless railroads having a right of way upon and across such streets, *have a common law duty to keep in repair so much, and such parts, of these streets as may be under the control of the railroad and necessary to its operation.*" (emphasis supplied)

We believe the above quoted from the Maples case to be a clear expression of the duty of railroads and municipalities to keep in repair street crossings. We think this duty applies in all instances regardless of whether the railroad was operating prior to the street crossing its tracks.

The purpose of the duty imposed is to promote the convenience and safety of the public at railroad crossings. Notwithstanding the fact a street has been constructed after the railroad was built, the railroad's duty is a continuing one as to keeping a crossing in repair. See Railroad v. State, 3 Head 523; Dyer County v. Railway, 87 Tenn. 712, 11 S.W. 943; Chattanooga v. Southern Railway Co., 128 Tenn. 399, 161 S.W. 1000; Atlantic Coastline Railroad Co. v. Smith 6 Cir., 264 F.2d 428.

■ Even if we are wrong as to the duty imposed to maintain its crossing, there is another reason for which the trial judge should have refused this special request. Although there was much proof tending to show the railroad was there before the street, nowhere in defendant's special pleas is the prior existence of the railroad set out or relied upon as a defense.

Our courts have consistently held that a special request outside the scope of the pleadings is not a proper instruction to be given to the jury. Blue Bird Coaches, Inc. v. McGregor, 14 Tenn.App. 23; Creekmore v. Woodard, 192 Tenn. 280, 241 S.W.2d 397; Erosion Control Corp. v. Evans, 58 Tenn.App. 90, 426 S.W.2d 202.

■ Appellant also insists the court erred in refusing to charge its special request telling the jury that the driver son's contributory negligence or remote contributory negligence would be imputed as a matter of law to the mother who was a passenger in the car.

Under the facts of this case we do not believe it would have been proper for the trial judge to charge the jury this special request. Neither do we believe the cases of Hawthorne (Bush), v. Lankes, 58 Tenn. App. 397, 430 S.W.2d 803, and Southern Railway Co. v. Butts, 214 Tenn. 328, 379 S.W.2d 794, cited by the defendant, are

applicable but are easily distinguishable. In the Butts case at the time of the accident the wife was driving the car with the owner husband as a passenger. In the Hawthorne case the owner of the car, before leaving for military service, delivered to his wife a power of attorney authorizing her use of the automobile. In that case the brother was driving the car which was involved in an accident with the owner's wife, who had power of attorney, as a passenger in the car.

These two cases differ from the instant case in that in each of the cases the person riding in the car was not only a passenger but one who had control of the vehicle.

The court did charge the jury the negligence of the son would be imputable to the father, the owner of the car. As for the mother, the court charged that the driver's negligence "is not imputable to Doris Ferrill, that is the mother, if you find from the proof that she is a passenger in the car, and that she had no authority to direct the driver, or had charge over the car, but if she had the right to control over and direction of either the driver or the car, then in that event, if you so find, the driver's negligence, that will be Tommy, if any, is also imputable to her, and if a proximate cause would bar recovery. Otherwise, it would not."

It is our opinion, when you read the charge as a whole, the trial judge not only correctly stated the law but gave a fair and impartial charge on negligence, contributory negligence and remote contributory negligence.

■ Additionally, in view of the jury's verdict in favor of L. Carl Ferrill, father and owner of the car, it is apparent the jury concluded that the son was not guilty of any proximate negligence. Therefore, if the court did err in charging in regard to imputed negligence, such was not prejudicial or harmful to the defendant.

■ Defendant also assigns as error the jury's taking into the jury room a chart prepared and used by plaintiffs' attorney during argument to the jury. This chart contained counsel's itemized estimation of plaintiff's damages such as medical expenses, $1,725.00; past physical discomfort, $35,075.00; permanent numbness, $54,750.00 etc., totalling $120,900.00.

By agreement the jury was permitted to take with it to the jury room the exhibits. Inadvertently the chart was included in the exhibits. Shortly before or immediately after the jury's return, it was discovered this chart was in the jury room. Prior to the jury's returning its verdict, counsel for the defendant asked for a mistrial on the grounds the chart had been in the jury room. The court refused this request and went on to receive the verdict of the jury. After the jury reported, counsel for the defendant asked the court to ascertain from the jury whether the chart was in the jury room. In response to this request the court asked:

THE COURT: Oh, perchance did the chart with those figures used in argument by the plaintiff, did they happen to be with the exhibits?

MR. HOBBS: Yes, they were in there, your Honor, but they didn't—we didn't go over the figures that were on the chart.

THE COURT: All right, the chart was in with the exhibits, but you didn't consider it?

MR. HOBBS: No, no more than what was marked in front of all of us here. We didn't go completely over that chart at any time.

Unquestionably, it was improper for the jury to take into the jury room this chart which was not an exhibit. Nevertheless, in view of the foreman's statement, along with the fact that the verdict in no way corresponds to but is less than the amount listed on the chart, we think the error was harmless. T.C.A. 27–117.

We will consider the defendant's insistence the judgments are excessive along with the plaintiffs' insistence the remittiturs should be restored.

At the time Mrs. Ferrill received this injury she was 39 years of age and was a housewife with no employment outside of the home.

The extent of the injury was a deep laceration reaching from the center of her nose to the end of her right cheek. The laceration reached all the way through the nose severing two facial nerves—one which controls the movement of the face and a sensory nerve.

Initial treatment was administered by Dr. Knowling, a plastic surgeon who closed the wound with sutures placed in the inner layers of skin as well as sutures in the outer skin. She was hospitalized for four days with the initial treatment. The initial surgery left a very noticeable and pronounced scar which a year later required plastic surgery requiring hospitalization. It was the testimony of Dr. Knowling that Mrs. Ferrill would require another operation to improve the appearance of the remaining scar. At the present time she still has a partial paralysis of the right side of her face and anesthesia of the left half of her upper lip. As a result of the permanent anesthesia of the lip and partial paralysis of the face, Mrs. Ferrill has developed a twitch or movement at the corner of her mouth when she blinks her eyes. She has also developed the nervous habit of covering her mouth and wiping her lips since she cannot feel nasal drippings or other things on the left side of her upper lip.

Even with the second plastic surgery Dr. Knowling testified Mrs. Ferrill would have some noticeable scarring. In addition to the scar and because of the severance of the nerve, she does not have the normal groove extending from the nose down toward the corner of the mouth. According to Dr. Knowling, she will always have some difficult in smiling, trying to whistle and saying certain words.

On numerous occasions our courts have pointed out there is no method by which damages for personal injuries can be mathematically calculated. Our cases hold that the amount awarded in personal injury cases is primarily for the jury to determine and next to the jury the most competent person to pass upon the matter is the judge who presided at the trial and heard the evidence. Reeves v. Catignani, 157 Tenn. 173, 7 S.W.2d 38.

Further, once the trial judge has ruled upon the issues of excessiveness or inadequacy and his ruling results in the suggestion of a remittitur or additure, on appeal the amount will not be disturbed unless an abuse of discretion is shown. Stark v. Yost, 47 Tenn.App. 28, 334 S.W.2d 954; Monday v. Millsaps, 37 Tenn.App. 371, 264 S.W.2d 6; Town of Clinton v. Davis, 27 Tenn.App. 29, 177 S.W.2d 848.

Applying the above rules, we find ourselves unable to say the awards in these cases are excessive. Likewise, we are unable to say the trial judge abused his discretion in remitting the verdicts. Accordingly, plaintiffs' assignment of error asking the remittitur be restored and the defendant's assignment of error the judgments are excessive are overruled.

Plaintiff has filed an additional assignment of error complaining of the trial judge's action in sustaining the City of Knoxville's demurrer. Since plaintiff did not file a motion for new trial setting out such as a ground nor was an appeal prayed for at the time the demurrer was sustained, this question is not properly before this court.

It results all assignments of error are overruled, the judgments as entered below are affirmed with costs taxed to the defendant.

COOPER, P. J. (E. S.), and SANDERS, J., concur.