Sallie Price COLE, Petitioner,

v.

David Lee WOODS et al., Respondents.

Supreme Court of Tennessee.

March 17, 1977.

Lloyd S. Adams, Jr., Adams & Albright, Humboldt, for petitioner.

Hewitt P. Tomlin, Jr., Waldrop, Hall, Tomlin & Farmer, Jackson, for respondents.

## OPINION

HENRY, Justice.

We granted certiorari in this wrongful death action primarily in order to reexamine the rule of law requiring that in a suit against a third party tortfeasor, the negligence of a non-owner driver must be imputed to a non-negligent owner passenger.[1] The Court of Appeals felt constrained to follow the rule announced in *Ringwald v. Beene*, 170 Tenn. 116, 92 S.W.2d 411 (1936) and followed in other cases, notably, *Angel v. McClean*, 173 Tenn. 191, 116 S.W.2d 1005 (1938) and *Snyder v. Missouri Pacific Railroad Co.*, 183 Tenn. 471, 192 S.W.2d 1008 (1946).

### I.

On Tuesday night, December 4, 1973, at approximately 10:00 o'clock, plaintiff's decedent, an eighteen year old woman, was fatally injured on a rural road running in front of her residence, when her automobile, operated by her fiance, was struck by a vehicle operated by the defendant, David Woods. They were en route to a nearby service station to purchase gasoline for her automobile. As they left her residence she handed the keys to her fiance, thereby impliedly asking that he drive.

He backed out the driveway into Hopper Barker Road and had reached a point where his vehicle, generally speaking, was in his right-hand lane, when the automobile operated by the respondent, David Woods, "topped" a hill headed in their direction. While this is strongly disputed, it was insisted by petitioner that the oncoming vehicle was approaching at a high rate of speed, with headlights on high beam, and on the wrong side of the road. Upon observing the approach of the oncoming automobile, the driver of the decedent's automobile attempted to drive back into the driveway and was hit by the oncoming car.

The trial jury awarded full and actual damages for the petitioner's automobile, and for the cost of hospital, funeral and ambulance, but made no award for the pecuniary value of the life of the deceased.

### II.

Numerous and sharp factual disputes were presented. It is neither necessary nor proper that we attempt to reconcile them.

The complaint charges the respondent, David Woods, and by imputation, the other respondents, with "willful and wanton disregard of the rights and safety of others", and specifically charges gross negligence.

Without weighing the evidence, or evaluating its preponderance, we find that there was evidence from which the jury might have found, among other things, that the defendant, David Woods:

a. was driving on the wrong side of the road;

b. was driving substantially in excess of the legal speed limit;

c. had been drinking;

d. approached the point of impact with his lights on "bright"; and

e. had diverted his attention to adjusting his car radio and was not keeping a lookout ahead.

Further, it is admitted that he was fifteen years of age and was operating his vehicle in the nighttime, under a restricted license, unaccompanied by a licensed parent or guardian, in violation of Sec. 59–704, T.C.A.

These contentions, supported by the testimony (not necessarily by the preponderance or better weight), clearly made a jury issue of the question of gross negligence. Taken collectively they would show "[a] heedless and reckless disregard for another's rights,

---

1. Three of the five assignments are rooted in this question.

with the consciousness that the act or omission to act may result in injury to another", *Inter-City Trucking Co. v. Daniels*, 181 Tenn. 126, 130, 178 S.W.2d 756, 757 (1943); or negligent acts "done with utter unconcern for the safety of others" or "with such a reckless disregard for the rights of others that a conscious indifference to consequences is implied in law". *Odum v. Haynes*, 494 S.W.2d 795, 807 (Tenn.App. 1972). These are commonly accepted definitions of gross negligence in Tennessee.

This case was submitted to the jury on the basis of ordinary negligence. The trial judge made no reference to gross negligence.

■ It is the duty of the trial judge to instruct on every issue of fact or theory of the case raised by the pleadings and supported by the proof. *Monday v. Millsaps*, 37 Tenn.App. 371, 264 S.W.2d 6 (1953); *Taylor v. State*, 212 Tenn. 187, 369 S.W.2d 385 (1963). In view of the pleadings and proof in this case the trial judge should have covered the question of gross negligence in his main charge. When he failed to do so, counsel for the plaintiff tendered the following special request:

> If you find from the weight of the evidence that defendant David Woods drove and acted in willful and wanton disregard of the rights and safety of others, especially Jeanette Price, then he would be guilty of gross negligence.
>
> If you do find from the weight of the evidence that defendant David Woods was guilty of gross negligence, then any ordinary negligence of Mitchell imputed to Jeanette Price would not bar a recovery, and it would be your duty to find for the plaintiff.

■ This is a correct statement of the law, when taken in conjunction with the main charge, and should have been given. It follows that the trial judge, had he given the requested charge, also should have instructed the jury that ordinary negligence would mitigate the damages awardable for defendant's gross negligence. *Hood v. Waldrum*, 58 Tenn.App. 512, 434 S.W.2d 94 (1968).

The failure of the trial judge to submit this substantial and significant issue to the jury was prejudicial error and we must, therefore, reverse and remand.

This brings us to the principal issue in this lawsuit, which we must address for the guidance of the trial judge on remand.

## III.

It was established as a rule of law in Tennessee, in *Turnpike Co. v. Yates*, 108 Tenn. 428, 67 S.W. 69 (1902) that when a person riding in the carriage of another sustains injury as a result of the negligence of a third party, he may recover against the latter notwithstanding the negligence of the owner (driver) of the carriage where the passenger is "without fault and has no authority over the driver". 108 Tenn. at 441, 67 S.W. at 72.

Thirteen years later this Court was confronted with a case of first impression, viz: Is the contributory negligence of the husband-driver imputable to the wife-passenger? In *Knoxville Ry. & Light Co. v. Vangilder*, 132 Tenn. 487, 178 S.W. 1117 (1915), the Court answered in the negative. It is interesting and significant that the Court pointed out a distinction which many decisions tend to ignore, i. e., that the passenger may be guilty of his own personal negligence. The Court said:

> [I]f an adult, who while riding in a vehicle driven by another sees, or ought by due diligence to see, a danger not obvious to the driver, or who sees that the driver is incompetent or careless, or is not taking proper precautions, it is his duty to give some warning of danger, and a failure to do so is negligence. 132 Tenn. at 498, 178 S.W. at 1120.

But it is the direct and personal negligence of the passenger existing independent of, or in conjunction with, the negligence of the driver, and imputed negligence is not actually involved.

In *Tennessee Central R.R. v. Vanhoy*, 143 Tenn. 312, 226 S.W. 225 (1920) the Court followed *Turnpike Co. v. Yates, supra,* and

held that the question of the failure of the guest to exercise due care was one of fact to be determined by the jury.

The celebrated case of *Schwartz v. Johnson*, 152 Tenn. 586, 280 S.W. 32 (1926) was decided in a most excellent opinion by then Chief Justice Grafton Green. First, Justice Green reiterated the *Yates-Vangilder* rule against the imputation of negligence to a passenger "without fault", unless the driver is under the control or authority of the passenger.

Next Judge Green wrote that "[t]o justify the imputation of negligence, there must be agency on the one hand, authority on the other." 152 Tenn. at 591, 280 S.W. at 33. While not specifically so stating, the Court quite obviously charged plaintiff with his own negligence in riding in an automobile with a drunken driver, as opposed to imputing the driver's negligence to him.

A fair summary of the law prior to 1936 would be that the negligence of the driver was not imputable to a passenger without fault unless he had some authority or control over the driver; but that it was the duty of the passenger to exercise due care for his own safety by warning of danger of perils unseen by the driver, by cautioning against careless or incompetent conduct on his part, and by not voluntarily placing himself in a position of peril by riding with a drunk or incompetent driver. The negligence of the passenger was a question of fact to be determined by the jury. An agency relationship was necessary to impute negligence.

In 1936, this Court decided *Ringwald v. Beene*, 170 Tenn. 116, 92 S.W.2d 411 (1936), the first Tennessee case to deal with imputed negligence from the standpoint of an owner-passenger. The factual situation was that plaintiff, a schoolteacher, was being driven to Middle Tennessee State Normal[2] for the purpose of attending a session designed to advance her educational qualifications. She was travelling in a car that belonged to her, and her husband was driving. In holding that the negligence of the husband-driver was imputable to the non-negligent wife-owner, the Court said:

> We do not see that the husband, driving this car on this mission, occupied a position different from that of any other driver whose services the wife might have secured. It was *her car, her trip, and her driver.* She was in control of the situation, and we think any negligence of her driver must be imputed to her. (Emphasis supplied). 170 Tenn. at 122, 92 S.W.2d at 413.

In reaching this conclusion the Court alluded to *Vangilder, supra,* recognized the general rule that when a wife is riding in automobile operated by her husband, his negligence cannot be imputed to her, and cited four cases from other jurisdictions. The cited cases were all decided on the theory of the creation of a bailment, and hold that the husband's negligence will not be imputed to the wife. Obviously, the Court rejected the bailment theory. Unfortunately, it cited no other authority, leaving the opinion in the predicament of not following the only cases cited and not specifying the precise reasons for reaching an opposite conclusion.

From the holding, as above quoted, we think it a fair conjecture that the Court considered primarily the use to which the automobile was being put, its ownership and control. It would, therefore, appear that this decision is rooted in the relationship of principal and agent.

Two years later this Court decided *Angel v. McClean*, 173 Tenn. 191, 116 S.W.2d 1005 (1938). The facts were analogous to those in *Ringwald, supra.* The purpose of the trip was to take the husband-driver to work and the wife-owner-passenger to the doctor. The Court followed *Ringwald*, noting that the only difference between the two cases was that in *Ringwald* the trip was "for the exclusive benefit of the wife; while in the case on trial the car was being used for the common or joint use of the husband and wife." 173 Tenn. at 193.

2. Now Middle Tennessee State University.

The Court noted with approval the "authority to control" criterion of *Yates, supra,* and held that "liability seems to hinge upon the *right to control* ", (Emphasis supplied), 173 Tenn. at 193, 116 S.W.2d at 1006. Further, the Court referred to "the underlying principle of control", 173 Tenn. at 196, 116 S.W.2d 1005, and specifically rejected the bailor-bailee relationship. The clear import of *Angel* is that the determining factor is *the right to control* vis-a-vis *actual control.* Again this brings us back to agency, or, more properly speaking, to the concept of a master-servant relationship.

The third significant case in this trilogy is *Snyder et al. v. Missouri Pacific R.R. et al.,* 183 Tenn. 471, 192 S.W.2d 1008 (1946). *Snyder* involved an auto-train collision in which the driver of the car was an employee of the owner-passenger. There was evidence that both men had been drinking prior to the accident. The *Snyder* Court, citing *Angel* and *Ringwald,* again relied upon the "right to control" rationale, reasoning that:

> [W]hen the *owner* is in his own car he has the *right to control its operation* unless there has been some bailment of the car to the driver. The reason that the negligence of a driver cannot be imputed to his *guest,* a passenger in the car, is that the latter *has no control of the car or of its operation.* (Emphasis supplied). 183 Tenn. at 481, 192 S.W.2d at 102.

Clearly, the *Snyder* Court construed "control" to mean constructive control based solely upon the mere ownership of the vehicle, and not upon any actual physical ability to control the vehicle.

In concluding that the driver-employee's contributory negligence would be imputed to the owner-passenger, the *Snyder* Court made the following observation:

> [I]t would scarcely be denied that Roth, the owner of this car, would have been liable for an injury inflicted on another

by Huffman's negligent operation of the vehicle at the time of this accident. 183 Tenn. at 482, 192 S.W.2d at 1012.

At least by implication the Court appears to have applied what is sometimes referred to as *the "both ways" rule.*[3] Simply stated, under the "both ways" rationale, if the principal would be responsible for the acts of his agent when defending a tort action, he should also be charged with such conduct when it amounts to contributory negligence.

It is difficult to determine whether the *Snyder* decision was based upon an owner-driver agency relationship or solely upon the "right to control" fiction. Nevertheless, the language quoted *supra,* which implies an application of the "both ways" rule, is troublesome.

The *Ringwald, Angel, Snyder* trilogy, despite some uncertainty as to the precise rationale upon which these cases are based, has become standard authority in Tennessee for the imputation of contributory negligence, in suits prosecuted by owner-passengers. Indeed, more recent Tennessee Supreme Court decisions have relied, unquestioningly, upon "the well-settled" rule established by these three early cases. *See, e. g., Southern Ry. Co. v. Butts,* 214 Tenn. 328, 379 S.W.2d 794 (1964).

Also applying the "imputed contributory negligence" rule are several decisions by the Court of Appeals. For example, *Hawthorne v. Lankes,* 58 Tenn.App. 397, 430 S.W.2d 803 (1968), involved an automobile owned by a serviceman, who, before leaving the country, executed a power of attorney with regard to his automobile in favor of his wife. The wife, a passenger in her husband's car, which was being driven by her brother, was injured in an accident. The Court of Appeals for the Middle Section, through Judge Todd, discussed at length the "both ways" rule and concluded that any contributory negligence of the driver

---

3. For discussion of the "both ways" rule and the imperfections of the rule of imputed contributory negligence, see Henniss, Imputed Contributory Negligence, 26 Tenn.L.Rev. 531 (1959); Lessler, The Proposed Discard of the Doctrine of Imputed Contributory Negligence, 20 Fordham L.Rev. 156 (1951); Prosser, Torts, Sec. 74, (4th ed. 1971); F. Harper & F. James, Torts, Sec. 23 (1956).

was imputed both to the passenger-wife and to the absentee owner of the vehicle. Although it was not specifically discussed, the passenger-wife's "ownership" of the vehicle was implied from the fact that she was in custody and control of her husband's vehicle.

In *Ferrill v. Southern Ry. Co.*, 493 S.W.2d 90 (Tenn.App.1972), the Court of Appeals declined to impute the driver-son's contributory negligence to the passenger-mother of a car owned solely by the father. Discussing *Hawthorne* and *Butts, supra*, the Court declared:

> in each of the cases the person riding in the car was not only a passenger *but one who had control of the vehicle.* (Emphasis supplied). 493 S.W.2d at 93.

Apparently the Court of Appeals believed the "right to control" the vehicle depended solely upon the mere fact of the vehicle's ownership, and from this naked right to control it followed that the driver's negligence was imputable to the owner-passenger. We are inclined to view this as a correct conclusion based upon the authorities hereinabove cited.

Thus there has developed a rigid rule in Tennessee decisional law that operates to impute negligence to an owner-passenger based solely upon the fact of ownership, and the corresponding *right to control,* and without regard to considerations of time, opportunity and reason to exercise control.

This rule is at variance with the general rule of imputed negligence in cases involving non-owner "guest passengers." There the negligence of the driver is not imputed to the passenger, but the rule is subject to the qualification that the passenger has certain duties and responsibilities. See, e. g., *Morgan v. Tennessee Central R.R.*, 31 Tenn. App. 409, 216 S.W.2d 32 (1949) (duty to exercise ordinary care); *Louisville & Nashville Ry. Co. v. Tucker*, 211 F.2d 325 (6 Cir. 1954) (duty to remonstrate and warn of danger); *Webster v. Trice*, 23 Tenn.App. 365, 133 S.W.2d 621 (1939) (duty to protest excessive speed); all qualified by the rule that there must be time for an effectual warning of protest, *Carman v. Huff*, 32 Tenn.App. 687, 227 S.W.2d 780 (1949), and that a guest has the right to assume that the driver will exercise proper care and caution until the contrary appears, *Chickasaw Wood Products v. Lane*, 22 Tenn.App. 596, 125 S.W.2d 164 (1938).

Reason, logic and common sense dictate that the rules of imputed contributory negligence be applied uniformly in all suits brought by passengers against third-party defendants.

We feel that we must either harmonize the rules or retreat from the doctrine of imputed contributory negligence. We note, in passing, that a departure from the rule, as a practical proposition, would have little effect upon the conventional imputed negligence situation. This follows from the fact that most of the situations commonly confronting the Court involve conduct that would constitute direct, personal and proximate negligence on the part of the passenger, and are not imputed negligence cases.

## IV.

The courts of our sister states have grappled with this problem with varying results.

In *Slutter v. Homer*, 244 Md. 131, 223 A.2d 141 (1966), the court made this apt comment:

> The doctrine of imputed negligence rests on the presumption that the non-driving owner had the right to control the vehicle. That presumption . . . is rebuttable; the presumption is based, not on the actual exercise of control, but on the right to exercise it. The agency doctrine, on the other hand, rests on the relationship of the parties and the nature of the expedition during which the accident occurred. Imputed negligence, like agency, is based on the relationship, but turns on the facts in respect to the right to control, whereas the agency theory applies where it is pertinent, irrespective of the momentary right of physical control. In short, the agency doctrine is predicated on a status rather than an inference of fact. 244 Md. at 139, 223 A.2d at 145.

In *Greyhound Lines, Inc. v. Caster,* 216 A.2d 689 (Del.Super.1966) it is recognized that

> the driver's contributory negligence will be imputed to, and will be a bar to an action by, an owner passenger, unless the owner can establish that he had actually surrendered his right of control to the operator, even though the owner was not in fact exercising that right at the time of the accident. 216 A.2d at 691.

The court refused to permit imputation where the driver was asleep.

*Gervais v. Kostin,* 48 Wis.2d 190, 179 N.W.2d 828 (1970) holds that where an owner is riding as a passenger, there arises a *rebuttable* presumption that the driver of such vehicle is acting as an agent for the owner-passenger.

In *Kremlacek v. Sedlacek,* 190 Neb. 460, 209 N.W.2d 149 (1973), the Court addressed the problem thusly:

> Where the owner is a passenger in his own automobile while it is being operated by another, the negligence of the operator is imputable to the owner where the owner assumes to direct or has the power to direct the operation of the automobile and to exercise control over it. This is ordinarily a *question* for the jury, unless the evidence is so conclusive that the minds of men could not reasonably arrive at any other conclusion. (Emphasis supplied). 190 Neb. at 464, 209 N.W.2d at 153.

*Fox v. Lavender,* 89 Utah 115, 56 P.2d 1049 (1936), cited by respondents, stands for the proposition that "where an owner is an occupant of his own car there arises a rebuttable presumption that he has control and direction of it." 89 Utah at 132, 56 P.2d at 1057.

It should be noted that under pertinent Tennessee decisional law, there is no room for a rebuttable presumption. Reading the cases carefully, they would justify a charge to the jury that the presumption is conclusive when ownership is shown.[4]

Respondents also cite us to *Phillips v. Foster,* 252 Iowa 1075, 109 N.W.2d 604 (1961). That case stands for the proposition that "the true test in determining whether or not contributory negligence is imputed to an owner is the *right to control* and whether or not control has been surrendered." (Emphasis supplied), 252 Iowa at 1080, 109 N.W.2d at 607.

Broadly speaking, this is the current Tennessee law; however, *Phillips* goes one step farther and recognizes that mere proof of ownership "does not establish as a matter of law right of control in the owner." 252 Iowa at 1081, 109 N.W.2d at 607. Finally, the *Phillips* Court said:

> [W]here the owner is present in the car his right of control is presumed, and the burden is upon him to show that it has been surrendered or, because of the factual situation, could not be exercised. 252 Iowa at 1083, 109 N.W.2d at 608.

Again, we come back to a rebuttable presumption as opposed to a "strong" or "conclusive" presumption, arising as a matter of law, and without consideration of the factual situation.

In *Menzigian v. La Riviere,* 334 Mass. 610, 137 N.E.2d 925 (1956) the Court recognizes that control is an attribute of ownership but "the right of control arising from ownership is *prima facie* only and may be contradicted or explained." 334 Mass. at 612, 137 N.E.2d at 927.

The rebuttable presumption rule obtains in North Dakota. *Pearson v. Erb,* 82 N.W.2d 818 (N.D.1957). The negligence of the driver is not imputable to an owner-passenger as a matter of law, but depends on the circumstances of the case to include whether the owner had a reasonable opportunity to exercise the right of control. See also, *Jasper v. Freitag,* 145 N.W.2d 879 (N.D.1966).

The Supreme Court of Oregon in *Johnson v. Los Angeles Motor Express, Inc.,* 222 Or. 377, 352 P.2d 1091 (1960), rejected the notion that recovery should be denied because

---

**4.** In the instant case the trial judge charged that there was a "strong presumption" of owner control. This was a correct charge under current law.

of imputed contributory negligence based on mere ownership alone.

Judge Hall (now Justice Hall of the Georgia Supreme Court), writing for the Court of Appeals, in *Blount v. Sutton*, 114 Ga. App. 767, 152 S.E.2d 777 (1966), summarized the issues and conclusions thusly:

> Mere ownership of an automobile does not render the owner liable for a collision occurring when it is driven by another person (citation omitted) nor is the fact that the operation of an automobile is with the consent and permission of the owner sufficient to establish that the driver is the agent or servant of the owner (citation omitted).
>
> . . . where an owner is present in an automobile being driven by another an inference may properly be drawn by the jury that the owner was in control of the operation of the automobile. (citation omitted). However, this inference only applies "where nothing else appears." (citation omitted) In other words "[t]here is a *presumption, in the absence of any evidence to the contrary,* that an owner present in his car has power to control it." 114 Ga.App. at 769, 152 S.E.2d at 778.

In *Boyd v. McKeever*, 384 Mich. 501, 185 N.W.2d 344 (1971) the Michigan Supreme Court held that the owner's right to control the driver may not be presumed, but is to be established upon the facts of the case.

In *Summers v. Summers*, 40 Ill.2d 338, 239 N.E.2d 795 (1968), the Illinois Supreme Court addressed the issue thusly:

> In substance, this defense rests on the theory that the negligence of a defendant-driver is imputable to an owner-passenger when the latter does not relinquish control of the vehicle to the former. This theory is not well taken because the negligence of a driver is not imputed to an owner-passenger in the absence of the relationship of *respondeat superior* or the existence of a joint enterprise. (citations omitted). An owner-passenger is chargeable for his own negligence on failing to perform his duty to control a driver, but the negligence of the driver is not imput-

able to him. * * * 40 Ill.2d at 343, 239 N.E.2d at 799.

In *Clauss v. Fields*, 29 Ohio App.2d 93, 278 N.E.2d 677 (1971) the Court held that there is a rebuttable presumption that an owner-passenger has control, and, "in the absence of any evidence to rebut such a presumption, the negligence of the driver in operating the motor vehicle is imputable to the owner riding therein." 29 Ohio App.2d at 96, 278 N.E.2d at 679.

In another owner-passenger case, *Gaspard v. LeMaire*, 245 La. 239, 158 So.2d 149 (1963), the Court said:

> It is unrealistic to hold, in the present day uses of motor vehicles when heavy traffic is the rule and not the exception, that the occupant of a motor vehicle has factually any control or right of control over the driving of the operator. Therefore, in the absence of a relationship of principal and agent or other legal relationship for which responsibility is imposed on one of the parties for the fault of the other or of independent contributory negligence of the passenger, or a showing that the parties were engaged in a joint adventure, no cogent reason exists for denying to the injured passenger recovery against a third person who has been guilty of negligence having causal connection with the accident. 245 La. at 253, 158 So.2d at 154.

The foregoing is a fair sampling of the cases disclosed by our research or cited to us by counsel. We find no case—and none is cited to us—where the mere fact of ownership, standing alone, is held to be sufficient to warrant a conclusion, or sustain a presumption, as a matter of law, that the owner-driver was in control of the vehicle.

We have reserved for special consideration and analysis the three most significant decisions cited by counsel or disclosed by our research.

The petitioner relies upon *Weber v. Stokely-Van Camp, Inc.*, 274 Minn. 482, 144 N.W.2d 540 (1966). There the Court, in a conspicuously well reasoned opinion by its Chief Justice, denounced the doctrine of

imputed contributory negligence and abandoned the rule that the negligence of a servant was imputable to a master in the latter's suit against a negligent third party.[5]

The philosophy of the opinion in *Weber* is expressed in the single sentence:

If negligence is based on fault, it is difficult to rationalize imputed negligence where the party seeking recovery is without fault. 274 Minn. at 486, 144 N.W.2d at 542.

Further the Court observed:

There may be some justification for the rule of vicarious liability even though the master is without fault; but from vicarious liability has come the companion rule imputing to the master the negligence of the servant when the master seeks to recover for his own damages and injury, even though the master was not at fault. There is no necessity for creating a solvent defendant in that situation, nor can any of the reasons given for holding a master vicariously liable in a suit by third persons be defended on any rational ground when applied to imputing negligence of a servant to a faultless master who seeks recovery from a third person for his own injury or damage. Why should the negligent third person escape liability under these circumstances? Here the logic, if there is any, for imputing negligence to a faultless plaintiff in a suit by him against a third party is completely lacking. 274 Minn. at 486, 144 N.W.2d at 542.

A most significant case not cited by either party is *Smalich v. Westfall*, 440 Pa. 409, 269 A.2d 476 (1970), wherein the Pennsylvania Supreme Court held that only a master-servant relationship or a joint enterprise between the driver of an automobile and the owner-passenger would justify imputation of contributory negligence. We commend this case for its excellent analysis of the various relationships that may exist between an owner-passenger and a driver of an automobile, i. e., bailor-bailee, principal-agent and master-servant.

By way of preface to a discussion of these relationships the Court notes that:

a plaintiff ought not to be barred from recovery against a negligent defendant by the contributory negligence of a third person unless the relationship between the plaintiff and the third person is such that the plaintiff would be vicariously liable as a defendant for the negligent acts of the third person. 440 Pa. 412, 269 A.2d at 480.

As Justice Sam Roberts points out in his concurring opinion, the Court by this language adopted a limited "both-ways" test. 440 Pa. at 421, 269 A.2d at 484.

The Court pointed out that as a general rule a bailor is not liable for the negligence of the bailee in the operation of the bailed chattel and that a principal is not liable for harm caused by the negligent act of his agent, over whom he has no control, (citing Prosser, The Law of Torts, § 70 (3rd ed. 1964)), but that a master has the right to exercise control and, therefore, is vicariously liable for the acts of his servant. From this the Court reasons that a master is barred from recovery against a negligent defendant by the contributory negligence of his servant acting within the course and scope of his employment. We quote the ensuing portion of the Court's opinion:

Perhaps many of the harsh results sometimes associated with the imputation of contributory negligence can be attributed to *our mistaken assumption that a principal is vicariously liable for the negligent acts of his agent.* We therefore now state unequivocally that *only a master-servant relationship or a finding of a joint enterprise* will justify an imputation of contributory negligence.

We have serious doubt that, in the ordinary situation, the mutual understanding of the owner-passenger and the driver is that the owner-passenger reserves a right

---

5. The Minnesota Court, in *Pierson v. Edstrom*, 286 Minn. 164, 174 N.W.2d 712 (1970) abolished the doctrine in joint enterprise situations.

to control over the physical details of driving or that the driver consents to submit himself to the control of a 'back-seat driver.' It seems more reasonable that the mutual understanding is that the driver will use care and skill to accomplish a result, retaining control over the manner of operation yet subject to the duty of obedience to the wishes of the owner-passenger as to such things as destination. Such would only constitute an *agency relationship* and not one of master-servant, although there are undoubtedly situations where the understanding might well be such as to constitute a master-servant relationship. All that we now hold is that the character of the relationship created by the parties must be determined from their express agreement or from the circumstances, which may be disclosed at trial. *The mere presence of the owner in an automobile while it is being driven in a negligent manner by another does not necessarily make him liable for an injury caused thereby, or impute to him the driver's negligence.* (citations omitted). Nor will it any longer create a presumption of a master-servant relationship. (Emphasis supplied). 440 Pa. at 416, 269 A.2d at 481–82.

Justice Roberts, in his concurring opinion chides his colleagues for "fall[ing] short of accomplishing the degree of reform necessary in this area [by] continuing to apply the doctrine to the master-servant relationship". 269 A.2d at 484 and "look[s] forward to the day when this Court completes its reform in this area." 440 Pa. at 424, 269 A.2d at 486.

Lastly, the New York Court of Appeals in *Kalechman v. Drew Auto Rental, Inc.*, 33 N.Y.2d 397, 353 N.Y.S.2d 414, 308 N.E.2d 886 (1973), became the first court "to unequivocably abolish the doctrine of imputed contributory negligence in automobile negligence cases." [6]

We quote from the opinion:
One of the most frequently made and obvious criticisms of the doctrine of imputed contributory negligence is that it rests on a legal fiction which has no basis in reality. (See, e. g., *Kleinman v. Frank*, supra [34 A.D.2d 121, 309 N.Y.S.2d 651] [Hopkins, J., dissenting]; *Kalechman v. Drew Auto Rental*, 38 A.D.2d 974, 331 N.Y.S.2d 711 [Shapiro, J., concurring]; Lessler, Proposed Discard of the Doctrine of Imputed Contributory Negligence, 20 Fordham L.Rev. 156; Imputed Negligence in Automobile Accident cases, 16 St. John's L.Rev. 222.

However in fairness to the rule it should be noted that at the time of its inception is apparently represented a realistic appraisal of the relationship between passenger and driver. One commentator has offered the following explanation of the genesis of the rule: "If the owner of a wagon and team handed the reins over to a passenger and let him drive, control of the horses was within easy reach. If he didn't think the driver reined up fast enough at a railroad crossing, he could reach out and resume control. * * * Actual control was a possibility, not a fiction." (Op.cit., 16 St. John's L.Rev. 222.) But with the advent of the modern automobile there is no longer any basis for assuming that the passenger, no matter what his relationship to the driver may be, has the capacity to assert control over or direct the operation of a moving automobile. The design of the vehicle, the high speeds at which it travels, the split second timing which is often necessary to avoid collision have all combined to erode the assumption that anyone other than the driver can effectively control the operation of the vehicle in traffic.

In fact, under modern driving conditions anyone who "allows another to drive would only increase the risk of accidents by interfering with the driver's control of the car or by diverting his attention" (op.cit., 16 St. John's L.Rev. 222). Although it might have been practical in the past, the modern highway is clearly the wrong place to assert the right to control. "Certainly assertion of such

---

6. Comment, 6 St. Mary's L.J. 526 at 532 (1974).

rights in the course of operation is not timely, nor in the interest of public safety." (*Jenks v. Veeder*, 177 Misc. 240, 242, 30 N.Y.S.2d 278, 281 [Bergan, J.], modified as to amount of verdict. 264 App. Div. 979, 37 N.Y.S.2d 230, affd., 290 N.Y. 810, 50 N.E.2d 231, supra.)

Thus the concept now rests on a pure legal fiction, which insofar as it assumes or encourages interference with the driver's function, conflicts with public policy. All this serves to illustrate the wisdom of Cardozo's celebrated observation that "Precedents drawn from the days of travel by stage coach do not fit the conditions of travel to-day." (*MacPherson v. Buick Motor Co.*, 217 N.Y. 382, 391, 111 N.E. 1050, 1053.) 33 N.Y.2d at 403, 353 N.Y. S.2d at 418, 308 N.E.2d at 889.

Finally the Court concludes:

We have therefore concluded . . . that the general rule should be applied without exception by allowing the plaintiff passenger to recover for negligent operation of the vehicle—no matter what his relationship to the driver may be—unless it is shown that his own personal negligence contributed to the injury. 33 N.Y.2d at 405, 353 N.Y.S.2d at 420, 308 N.E.2d at 891.

### V.

We have considered and analyzed this matter in the light of the indisputable fact that the laws of every land from time eternal have contained a system of tort law, in one form or another, that recognized the right of the innocent victims of wrongful conduct to recompense at the hands of the wrongdoer. The doctrine of imputed contributory negligence, founded in fallacy and existing without justification, is an impediment to that right and a stumbling block in the path of justice.

The question of a passenger's right to recover should depend solely upon the presence or absence of his own personal contributory negligence.

We do not believe that, absent a showing of a master-servant relationship or of a joint enterprise, the status of the passenger or his relationship with the driver of an automobile is of any consequence, except to the limited extent that it may be a circumstance to consider in determining the personal contributory negligence of the passenger. We hold that henceforth, in automobile cases, only a master-servant relationship or a finding of joint enterprise will justify an imputation of contributory negligence. In all other automobile cases, the doctrine of imputed contributory negligence has no current validity.[7] All cases contra are overruled.

We reiterate our view that, in a substantial number of imputed negligence cases appearing in our reported decisions, our courts have characterized as imputed contributory negligence that which actually constituted direct, proximate and personal negligence on the part of the passenger.

This ruling does not leave the third party tortfeasor standing naked and defenseless. The passenger must exercise reasonable care for his own safety. For instance, he must warn the driver of dangers unknown to the driver, must protest excessive speed, must not ride with a drunken driver or one who is reckless or incompetent, and must not entrust his automobile to a driver who is, or becomes, incompetent for any reason. In short, the duties now imposed upon "guest passengers" under the decisional law of the state continue in full force and effect. It is entirely possible that the jury might find such direct, personal and proximate contributory negligence in this case.

The doctrine of imputed contributory negligence, however, henceforth will not be charged in any suit or action in which recovery is sought by an automobile passenger, and in which there has not been a finding of a master-servant relationship or of a joint enterprise.

---

**7.** It should be noted that the mere presence of the owner in an automobile driven by another does not create the presumption of a master-servant relationship, or of a joint enterprise. In the typical situation, the relationship involved is one of agency.

We are not unmindful of Sec. 59–1037, T.C.A. providing that proof of ownership is "prima facie evidence that said vehicle . . . was being operated and used with authority, consent and knowledge of the owner . . . and that said vehicle was then and there being operated by the owner, or by the owner's servant, for the owner's use and benefit and within the scope and course of his employment." Nor are we unmindful of Sec. 59–1037, T.C.A. relating to proof of registration.

These statutes are unaffected. This ruling does not trench upon them nor do they operate to dilute the ruling. The rules of *respondeat superior* are unaffected. In an action by a third party brought against a master, his vicarious liability is unaffected, and the negligence of his servant is chargeable to him and he is answerable therefor. We confine this ruling to automobile negligence cases. It is possible that other situations may arise where the same result would follow; however, we leave those decisions for the future.

We limit the retrospective application of this decision to this case and to those others wherein the issue of imputed contributory negligence was raised in the trial court by appropriate pleadings and proof, now pending motions for new trial or in the pipeline of appellate review.

In fairness to the trial judge and to the Court of Appeals, it should be stated that in this regard they were prompted by existing decisional law of the state and it would be unfair to charge them with error. We reverse because of the erroneous charge, or the failure to charge gross negligence. In view of the disposition we make of this case we do not consider it necessary or appropriate to comment on the remaining assignments of error.

COOPER, C. J., and FONES, BROCK and HARBISON, JJ., concurring.